ROBERT ANASTASIO v. MAIL CONTRACTORS OF AMERICA, INC., ET AL.
(AC 20019)

Mihalakos, Dranginis and Dupont, Js.

---

Argued December 10, 2001—officially released April 30, 2002

*Jason M. Dodge*, for the appellants (defendants).

*J. Sarah Posner*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *William J. McCullough*, assistant attorney general, for the appellee (defendant second injury fund).

*Opinion*

MIHALAKOS, J. The defendants, Mail Contractors of America, Inc. (Mail Contractors), and its insurer, Vanliner Insurance Company (insurer),[1] appeal from the decision of the workers' compensation review board (board), which affirmed the decision of the workers' compensation commissioner for the third district (com-

---

[1] The insurer is referred to in the record at times as Thomas E. Fay Insurance Adjusters. Thomas E. Fay Insurance Adjusters is the licensed Connecticut adjusting company for Vanliner Insurance Company. Because the defendants' brief lists the party as Vanliner Insurance Company, we designate this party as such here. We note as well that further reference to the "defendants" in this opinion refers only to Mail Contractors and its insurer.

missioner) to dismiss their request to transfer liability to the defendant second injury fund (fund) for the payment of disability benefits that had been awarded to the plaintiff, Robert Anastasio.[2] The board affirmed the dismissal on the ground that notice to the fund was untimely and not on the ground fixed by the commissioner, namely, failure to pay the statutorily required $2000 notification fee. The principal and dispositive issue to be decided in this appeal is whether the defendants' claim is moot for failure to file timely and complete notice to transfer liability to the fund pursuant to General Statutes (Rev. to 1993) § 31-349 (b),[3] as amended by the retroactive application of Public Acts 1995, No. 95-277 (P.A. 95-277), § 3 (b).[4] We conclude that the defendants filed timely notice but failed to file proper notice with the fund and, therefore, we dismiss this appeal as moot.

The underlying facts found by the commissioner are not in dispute. On May 2, 1992, the plaintiff, a truck

[2] The plaintiff is not a party to this appeal. The defendant second injury fund is the appellee in this appeal.

[3] General Statutes (Rev. to 1993) § 31-349 (b) provides in relevant part: "As a condition precedent to the liability of the second injury fund, the employer or his insurance carrier shall, ninety days before the expiration of the first one hundred four weeks of disability, notify the custodian of the second injury fund of the pending case . . . ." Although the defendants refer in their brief to the 1991 version of this statute, the 1993 version of the statute provided here incorporates amendments made by the public acts of 1991, which were in effect on the date of the plaintiff's injuries.

[4] Public Acts 1995, No. 95-277, § 3 (b), effective July 1, 1995, and now codified in General Statutes § 31-349 (b), provides in relevant part: "As a condition precedent to the liability of the Second Injury Fund, the employer or its insurer shall: (1) Notify the custodian of the fund by certified mail no later than three calendar years after the date of injury or no later than ninety days after completion of payments for the first one hundred and four weeks of disability, whichever is earlier, of its intent to transfer liability for the claim to the Second Injury Fund; (2) include with the notification (A) copies of all medical reports, (B) an accounting of all benefits paid, (C) copies of all findings, awards and approved voluntary agreements, (D) the employer's or insurer's estimate of the reserve amount to ultimate value for the claim, (E) a two-thousand-dollar notification fee payable to the custodian

driver employed by the defendant Mail Contractors, suffered a neck, back and left shoulder sprain by falling from the running board of his truck while on the job. Beginning on May 5, 1992, the plaintiff sought and received medical treatment for the injury. The plaintiff was diagnosed thereafter as totally disabled since the date of the injury. The parties have agreed that the compensable injury met the medical qualifications for transfer to the fund.

On September 16, 1993, the defendant insurer, through its agent, issued a voluntary agreement setting forth the respective rights of the parties, but the document was not executed at that time due to an unresolved question. On February 1, 1994, the insurer realized that the document had not been approved so, having resolved the dispute previously, it issued an amended agreement and had an employee hand-carry it to the third district office of the workers' compensation commission for certification. On February 2, 1994, the insurer sent the fund a copy of the approved document along with notification of the defendants' intent to transfer the claim to the fund. The signed and approved voluntary agreement recognized the plaintiff's compensable injuries and stated that his incapacity had begun on May 3, 1992. On February 8, 1994, the fund sent the insurer a letter indicating that the defendants' notice and voluntary agreement had been received on February 2, 1994, along with up-to-date medical information on the plaintiff, who continued to receive treatment.

On March 16, 1995, the insurer received a letter from the fund requesting to know whether the defendants intended to transfer liability for payment of the plaintiff's disability payments to the fund. On May 4, 1995, in response to the fund's letter, the insurer sent a letter

to cover the fund's costs in evaluating the claim proposed to be transferred and (F) such other material as the custodian may require. . . ."

to the fund that identified the parties and contained a summary of the plaintiff's medical treatment, the amount of indemnity benefits that had been paid to the plaintiff, and the estimated amount of moneys needed for reserve for the plaintiff's future medical expenses and indemnity. On June 5, 1995, the defendants wrote to the fund concerning the injury, and enclosed a prior finding and award issued by a workers' compensation commissioner to supplement their initial notice to the fund. On September 7, 1995, another letter was sent to the fund concerning renotification and stating the defendants' intent to pursue transfer of liability to the fund. That letter stated that it was intended to supplement the prior notices to the fund from February, 1994, and June, 1995. The defendants have never paid the $2000 notification fee, which is required currently under § 31-349 (b), as amended by P.A. 95-277.[5] See footnote 4.

On September 30, 1998, the commissioner concluded from those facts that the plaintiff was totally disabled from the injury and that the disability commenced on May 3, 1992. The commissioner also concluded that the defendants had notified the fund of their intent to transfer liability for the compensable injury on February 2, 1994, and had paid compensation continuously to the plaintiff since May 3, 1992. The commissioner decided that the defendants had failed to meet the notice requirements of § 31-349 as it existed prior to July 1, 1995, because the ninetieth day prior to the payment of 104 weeks of compensation passed on January 31, 1994. Nevertheless, the commissioner concluded that the defendants' notice to the fund was timely via the retroactive application of P.A. 95-277, § 3 (b) (1), which

---

[5] Although the defendants do not dispute that the fee was not paid, they do contend that they were exempt from the statutory requirement to pay the fee under General Statutes § 31-349 (e). See part II. We note also that the commissioner and the board referred mistakenly to the section requiring the fee as § 31-349 (b) (2) (B) and § 31-349 (b) (E), respectively.

in the commissioner's view lengthened the time allowed for the defendants' initial notification by 180 days. Even so, the commissioner then concluded that the defendants' claim should be dismissed because they had failed to pay the required $2000 notification fee, which would have completed the notification to the fund. Further, because notification was left incomplete, the fund had no responsibility to notify the defendants that it would reject their claim for transfer. Finally, the commissioner decided that because the notice was defective there was no jurisdiction to determine if equitable principles could preclude the fund from raising a defense to the claim for transfer. The defendants appealed from that ruling to the board on October 7, 1998, while simultaneously filing a motion to correct the commissioner's decision.[6]

On August 31, 1999, the board affirmed the commissioner's decision to dismiss the defendants' transfer claim but concluded that notice was untimely rather than incomplete. In reaching its conclusion, the board reasoned that the retroactive application of P.A. 95-277 was of no avail to the defendants. Applying the scheme of P.A. 95-277, § 3 (b) (1), to the plaintiff's case, the board decided that the allowable time period for initial notification would have expired in either July, 1994, or by May 2, 1995. Next, the board noted that on July 1, 1995, the date that P.A. 95-277 became effective, the relevant provision of the act had no potential impact on this case. As a result of that analysis, the board concluded that the defendants' February 2, 1994 notice was untimely because, under the version of § 31-349 in effect before P.A. 95-277 became effective, notice was due on January 31, 1994.

---

[6] The defendants' motion, which was granted in part and denied in part, sought minor changes to the commissioner's findings that are not dispositive of the issue here.

The board also concluded that the term disability referred to medical impairment and not employment status. Consequently, the board concluded that it was reasonable for the plaintiff's physicians to determine that his medical impairment began the day after the injury, on May 3, 1992, and not on the date of the plaintiff's first doctor's visit on May 5, 1992. Accordingly, the board deemed specious the defendants' argument that May 5, 1992, was the operative date of disability and that using that date made the notice timely by one day. Further, the board noted that timely renotification under § 31-349 (e) cannot cure an otherwise insufficient initial notice. On September 16, 1999, the defendants appealed to this court from the board's decision.

Subsequent to the defendants' filing the appeal, the fund filed a motion to dismiss the appeal for lack of subject matter jurisdiction pursuant to General Statutes § 31-349h.[7] In the motion to dismiss, the fund argued that the appeal is moot because the plain language of § 31-349h bars the court from ordering transfer of liability on a claim to the fund after July 1, 1999. The defendants objected to the motion and argued that as long as the appellate process concerning the disputed transfer claim commenced before July 1, 1999, as here, the court has jurisdiction to order the claim transferred to the fund after that date via a tolling of the limitation period set forth in § 31-349h. On January 5, 2000, this court denied the fund's motion to dismiss the appeal and, sua sponte, ordered the parties to brief the mootness issue. Both parties complied with that order and we now address the question.

"Mootness implicates [this] court's subject matter jurisdiction and is thus a threshold matter for us to

[7] General Statutes § 31-349h provides: "All transfers of claims to the Second Injury Fund with a date of injury prior to July 1, 1995, shall be effected no later than July 1, 1999. All claims not transferred to the Second Injury Fund, on or before July 1, 1999, shall remain the responsibility of the employer or its insurer."

resolve. . . . It is a well-settled general rule that the existence of an actual controversy is an essential requisite to appellate jurisdiction; it is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow. . . . An actual controversy must exist not only at the time the appeal is taken, but also throughout the pendency of the appeal. . . . When, during the pendency of an appeal, events have occurred that preclude an appellate court from granting any practical relief through its disposition of the merits, a case has become moot." (Internal quotation marks omitted.) *Giaimo* v. *New Haven*, 257 Conn. 481, 492–93, 778 A.2d 33 (2001). We note that this court ordinarily defers "to the construction of a statute applied by the administrative agency empowered by law to carry out the statute's purposes." (Internal quotation marks omitted.) *Soares* v. *Max Services, Inc.*, 42 Conn. App. 147, 172, 679 A.2d 37, cert. denied, 239 Conn. 915, 682 A.2d 1005 (1996). Nonetheless, "because [a] determination regarding . . . subject matter jurisdiction is a question of law, our review is plenary." (Internal quotation marks omitted.) *Lawrence Brunoli, Inc.* v. *Branford*, 247 Conn. 407, 410, 722 A.2d 271 (1999).

Our Supreme Court has held on at least three occasions that § 31-349h "does not bar the transfer of claims that were eligible for transfer prior to July 1, 1999, and that ultimately are found to be transferable." *Genden* v. *American Airlines*, 257 Conn. 520, 522, 778 A.2d 58 (2001); see *Zeoli* v. *Norwalk Hospital*, 257 Conn. 527, 531, 779 A.2d 78 (2001); *Giaimo* v. *New Haven*, supra, 257 Conn. 498. In the seminal case on this issue, *Giaimo* v. *New Haven*, supra, 498, our Supreme Court employed the rules of statutory construction to discern the legislative intent behind § 31-349h. Specifically, our Supreme Court interpreted § 31-349h "to mean that claims not

eligible to be transferred to the second injury fund, on or before July 1, 1999, because 104 weeks of payments had not been made by the employer or by its insurer or because the statutory notice requirements had not been met, shall remain the responsibility of the employer or its insurer. If those requirements have been met, however, but the eligibility of a claim was in dispute on July 1, 1999, transfer of the claim is not barred if the claim is ultimately found to have been eligible for transfer before that date. Accordingly, if it is ultimately determined in this case that the claim should have been transferred to the fund before July 1, 1999, practical relief may be granted."[8] Id. The parties here agree that, other than meeting notice requirements, the claim

[8] In *Giaimo*, our Supreme Court was faced with resolving "an apparent inconsistency in the statutes governing the fund." *Giaimo* v. *New Haven*, supra, 257 Conn. 494. In that case, the fund argued that General Statutes § 31-349h barred any claim for transfer to the fund not resolved by July 1, 1999, regardless of whether the appellate process involving a particular claim was completed by that date. *Giaimo* v. *New Haven*, supra, 494–95. The fund's opponent, the city of New Haven (city), responded that § 31-349h "should apply only to claims that were not *eligible* for transfer prior to July 1, 1999 . . . ." (Emphasis in original.) Id., 495. Our Supreme Court agreed with the city's argument that if "the claim should have been transferred to the fund before July 1, 1999, the fact that the appeal process could not be completed before that date should not bar the transfer." Id. In support of this conclusion, our Supreme Court stated that "[i]f the legislature had meant to terminate *all* claims, including those where the requirements for a transfer had been met and those where the requirements had not been met, on July 1, 1999, it easily could have so provided." (Emphasis added.) Id., 496–97. Stated in the negative, therefore, our Supreme Court held that if either the applicable notice requirements were not met or the claim was otherwise ineligible for transfer before July 1, 1999, then § 31-349h bars transfer of the defendants' claim to the fund.

Here, in its appellate brief, the fund offers a different version of its mootness argument than that made in its motion to dismiss. The fund seeks to recast its interpretation of § 31-349h by stating that its argument is not "that the legislature snuffed out the right to appeal, but that this appeal has become moot because the underlying legal issue has been resolved by the enactment of P.A. 95-277." Regardless of how the claim of mootness is presented, however, the question to be examined here is still whether the claim was transferable ultimately to the fund and, in particular, whether the defendants filed proper notice under the applicable law.

involved in this appeal was eligible for transfer before July 1, 1999. As a result, the issue here is whether the defendants' claim met the applicable notice requirements and, therefore, was transferable ultimately. If the answer to this question is in the affirmative, we could grant practical relief by reversing the board's decision and ordering that the defendants' claim be transferred to the fund. To the contrary, because we conclude that notice was timely but incomplete and that consequently no practical relief may be granted, the transfer is barred by § 31-349h and thus the appeal is moot.

I

On appeal, the defendants contend that the retroactive application of P.A. 95-277, § 3 (b) (1), extended the time for filing a transfer claim to no later than ninety days after the completion of the first 104 weeks of disability and that, therefore, the notice received by the fund on February 2, 1994, was 177 days early.[9] We agree.

The defendants are correct in asserting that, without doubt, P.A. 95-277, § 3, now codified as § 31-349 (b), applies retroactively. See *Badolato* v. *New Britain*, 250 Conn. 753, 757–61, 738 A.2d 618 (1999); cf. *Karnane* v. *Saks Fifth Avenue*, 67 Conn. App. 385, 388, 786 A.2d 1228 (2001) (defendants conceded 1993 version of § 31-349 [b] governed timeliness of notice). In the *Badolato* decision, our Supreme Court ruled that "[r]egardless of whether we characterize P.A. 95-277, § 3 as procedural or substantive . . . there are ample grounds to conclude that the legislature intended P.A. 95-277, § 3 to remove the fund's obligation to reimburse the [defendant] on or after July 1, 1995. The same considerations

_____

[9] The defendants do not claim on appeal, as they did before the commissioner and the board, that they filed timely notice under General Statutes (Rev. to 1993) § 31-349 as it existed prior to the effective date of P.A. 95-277, § 3, on July 1, 1995. Indeed, the defendants filed their initial notice on February 2, 1994, two days late under the old law.

that led us to recognize in [prior case law] that the legislature enacted P.A. 95-277 in the face of sobering facts . . . and that the fund faced grave problems and had become a threat to the future economic health of our state . . . leads us to conclude in this case also that the legislature intended P.A. 95-277, § 3 to be applied retrospectively." (Citations omitted; internal quotation marks omitted.) *Badolato* v. *New Britain*, supra, 760. Our Supreme Court further stated: "[A] statute is passed as a whole and not in parts or sections and is animated by one general purpose and intent. . . . The purpose of P.A. 95-277 was to reduce the financial burden on the fund. Accordingly, we must construe the legislation in a manner consistent with that goal." (Citation omitted; internal quotation marks omitted.) Id. Mindful of these underpinnings, we must also construe the act in a way that furthers its legislative objective. Thus, the lone legal conclusion that P.A. 95-277, § 3, applies retroactively does not end the matter.

It is also well established that in workers' compensation cases "jurisdiction is confined by the [Workers' Compensation Act, General Statutes § 31-275 et seq.] and limited by its provisions. . . . The [Workers' Compensation Act] is not triggered by a claimant until he brings himself within its statutory ambit. . . . Although the Workers' Compensation Act should be broadly construed to accomplish its humanitarian purpose . . . its remedial purpose cannot transcend its statutorily defined jurisdictional boundaries." (Citations omitted; internal quotation marks omitted.) *Dowling* v. *Slotnik*, 244 Conn. 781, 799–800, 712 A.2d 396, cert. denied sub nom. *Slotnik* v. *Considine*, 525 U.S. 1017, 119 S. Ct. 542, 142 L. Ed. 2d 451 (1998).

The defendants contend that they fell within the jurisdictional boundaries of the Workers' Compensation Act because the retroactive application of P.A. 95-277, § 3 (b) (1), extended the time for filing notice by 180 days

so that their notice was 177 days early. Public Acts 95-277, § 3 (b) (1), now codified as § 31-349 (b) (1), required the defendants to notify the fund "no later than three calendar years after the date of injury or no later than ninety days after completion of payments for the first one hundred and four weeks of disability, whichever is earlier . . . ." May 2, 1995, was the date three calendar years from the undisputed date of the plaintiff's injury. As the defendants conceded in their brief, the date ninety days after completion of payments for the first 104 weeks of disability fell at the end of July, 1994. Accordingly, notice under the provisions of § 31-349, as amended by P.A. 95-277, § 3, was due at the end of July, 1994. The parties agree, and the record is clear, that the defendants filed their initial notice with the fund on February 2, 1994, well before the July, 1994 cutoff date. This initial notice is also the only notice filed with the fund before the cutoff date.[10] The defendants argue correctly, therefore, that under the amended law, they filed notice with the fund within the allowable time period. Having concluded that the defendants' notice was timely, we now turn to the question of whether the notice in this case was complete.

## II

We have held that along with the requirement of timely notice "[t]here can, of course, be no effective transfer of liability to the Fund under § 31-349 until *all* those materials specified in that statute have been furnished to the fund, and not just notification of the pendency of the case." (Emphasis in original; internal quotation marks omitted.) *Soares* v. *Max Services, Inc.,* supra, 42 Conn. App. 168; see *Casey* v. *Northeast Utilities,* 249 Conn. 365, 372 n.4, 731 A.2d 294 (1999) ("proper

---

[10] We note, therefore, that the several letters of notice sent by the defendants in response to the fund's March, 1995 request for resubmission of notices are not operative here.

transfer may be effectuated by fulfilling certain statutory requirements"). The defendants were mandated by law to follow all the requirements for notice delineated by § 31-349 as amended by P.A. 95-277, § 3. Public Acts 95-277, § 3 (b) (2) (E), required that the defendants submit, along with their timely notice, a $2000 notification fee to cover the fund's costs in processing the claim for transfer. We are mindful of the "basic tenet of statutory construction that the legislature did not intend to enact meaningless provisions." (Internal quotation marks omitted.) *Giaimo* v. *New Haven*, supra, 257 Conn. 493. Moreover, as we noted in part I, a statute performs its function as a whole and not in disconnected segments. See *Badolato* v. *New Britain*, supra, 250 Conn. 760. Consequently, we must construe P.A. 95-277 as being animated by its purpose to reduce the financial burden on the fund. See id. The defendants have failed to pay the statutorily required $2000 fee. With that undisputed fact and those immutable precepts in mind, we conclude that we cannot allow the defendants to take advantage of the extended time for filing notice under P.A. 95-277, § 3, without also requiring compliance with the section's other notice requirements. To do otherwise would undermine the legislative objective embodied in the enactment of P.A. 95-277.

The defendants argue to the contrary that they are excused from paying the required fee for two reasons. We disagree. First, the defendants claim that they are exempt from the fee requirement under § 31-349 (e).[11]

[11] General Statutes § 31-349 (e) provides: "All claims for transfer of injuries for which the fund has been notified prior to July 1, 1995, shall be deemed withdrawn with prejudice, unless the employer or its insurer notifies the custodian of the fund by certified mail prior to October 1, 1995, of its intention to pursue transfer pursuant to the provisions of this section. No notification fee shall be required for notices submitted pursuant to this subsection. This subsection shall not apply to notices submitted prior to July 1, 1995, in response to the custodian's request, issued on March 15, 1995, for voluntary resubmission of notices."

We are persuaded by the analysis of the board in *Audi* v. *Chapman*, No. 3418, CRB-3-96-9 (August 4, 1997), that § 31-349 (e) was not intended to apply to notice unsuccessfully made under the prior version of the law.[12] As a result, § 31-349 (e) is inapplicable here because under the old law the defendants were not successful in their attempt to notify the fund of their claim for transfer.[13] We conclude, therefore, that the defendants may not avail themselves of the exemption from the fee requirement found in § 31-349 (e).

Alternatively, the defendants stress that at the time they filed notice they were unaware that they should pay the required fee because P.A. 95-277 had not been enacted yet. The defendants argue, therefore, that requiring them to pay the fee at that time was an impossible task. In support of that argument, the defendants

[12] In *Audi*, the board concluded that when the legislature used the term "notified" it meant "properly and timely notified, rather than unsuccessfully notified. [Public Acts 95-277, § 3 (e), now codified as General Statutes § 31-349 (e),] clearly deals with pending notice claims that the Fund had been apprised of prior to July 1, 1995, and forces the party seeking transfer to reaffirm its intent to pursue its claim, as all claims were deemed withdrawn with prejudice subject to renotification by October 1, 1995. See 38 S. Proc., Pt. 15, 1995 Sess., p. 5487 (remarks of [Senator John A.] Kissel). Nowhere in this provision does the legislature evince an intent to allow parties that have missed the filing deadline in the past to resurrect those claims by renotifying the Fund of their intent to seek transfer." (Internal quotation marks omitted.) *Audi* v. *Chapman*, No. 3418, CRB-3-96-9 (August 4, 1997).

[13] We note as well that General Statutes § 31-349 (e) expressly states that it is not applicable to any notice filed prior to July 1, 1995, in response to the fund's request for voluntary resubmission of notices. Thus, even if the notice letters sent by the defendants after their initial February 2, 1994 notice but before July 1, 1995, were operative here, they would not be exempt from the fee requirement because they were sent in response to the fund's request. See footnote 10. In addition, the defendants' reliance on *Masko* v. *Wallingford*, 67 Conn. App. 276, 786 A.2d 1209 (2001), for the proposition that they are exempt from the fee requirement is misplaced. The issue in that case was whether a renotice letter submitted subsequent to timely initial notice and relying on the speed of the mail service was timely under § 31-349 (e). Id., 278. The present case clearly is dissimilar from *Masko* both on its facts and on the issues to be resolved.

direct us to our Supreme Court's suggestion that judicial interpretation of § 31-349 should avoid requiring a type of notice that is impossible to give. See *Vaillancourt* v. *New Britain Machine/Litton*, 224 Conn. 382, 392–93 n.10, 618 A.2d 1340 (1993). Subsequent to our Supreme Court's decision in *Vaillancourt*, this court affirmed the holding of a compensation review board that excused a timely but incomplete notice because providing timely and complete notice was deemed impossible. See generally *Thompson* v. *Roach*, 52 Conn. App. 819, 728 A.2d 524, cert. denied, 249 Conn. 911, 733 A.2d 227 (1999). In that case we concluded that "[w]here notice . . . is impossible to give, the failure to comply strictly with § 31-349 will not preclude a transfer of liability. . . . Under such circumstances, notice will be considered timely if provided within a reasonable period of time thereafter." (Citation omitted.) Id., 823.

The present case differs markedly, however, from *Thompson*. In *Thompson*, the defendant insurer was prevented from providing complete notice because the plaintiff's employer became defunct and information relevant to the claim was not obtained until well after the deadline for timely notice. Id., 822. Moreover, within a reasonable time after obtaining the information, the defendant insurer in *Thompson* provided the fund complete notice in accordance with the notice provision of § 31-349. Id. In the present case, although the defendants could not have been aware of the required fee when they filed their initial notice, they were not prevented from completing notice within a reasonable time after P.A. 95-277, § 3, became effective on July 1, 1995. In fact, the defendants conceded in their brief that they were familiar with P.A. 95-277 since at least September 7, 1995, if not before. On that date, as the defendants stated, they attempted to provide the fund "with a 're-notice' letter in accordance with [P.A. 95-277]." Without deciding exactly what would have been a reasonable

time here, we conclude that allowing more than six years to pass without paying the required fee was not reasonable. Consequently, the defendants' claim of impossibility is unavailing because they could have completed notice when P.A. 95-277 became effective. Moreover, to conclude otherwise would be to undermine the legislative objective of P.A. 95-277 and to apply its notice provisions in a piecemeal fashion, which we will not do. See *Badolato* v. *New Britain,* supra, 250 Conn. 759–60. Because the timely February 2, 1994 notice was not complete, the defendants' claim was not transferable ultimately, and we cannot grant any practical relief. Accordingly, the defendants' claim for transfer is barred by § 31-349h and, therefore, is moot.

The appeal is dismissed.

In this opinion the other judges concurred.