# VANLINER INSURANCE COMPANY *v.* THOMAS E. FAY
## (AC 26323)

Gruendel, Harper and Hennessy, Js.

Argued May 30—officially released October 17, 2006

*Christopher B. Weldon*, with whom, on the brief, was *Darren P. Renner*, for the appellant (defendant).

*Duncan J. Forsyth*, with whom was *Benjamin C. Jensen* and, on the brief, *James V. Somers*, for the appellee (plaintiff).

GRUENDEL, J. In this breach of contract and negligence action, the defendant, Thomas E. Fay, an insurance adjuster, appeals from the judgment of the trial court rendered, after a trial to the court, in favor of the plaintiff, Vanliner Insurance Company. The court found that the defendant had breached his duty of care and the parties' contract, and awarded the plaintiff damages in the amount of $737,568. On appeal, the defendant claims that the court improperly (1) considered evidence regarding an issue that was barred by collateral estoppel, (2) determined that the plaintiff was not required to present expert testimony on the issue of professional negligence, (3) concluded that the continuing course of conduct doctrine prevented the plaintiff's negligence claims from being barred by the statute of limitations, (4) determined that the six year statute of limitations, as opposed to the three year statute of limitations, applied to the plaintiff's breach of contract claims and (5) found that the plaintiff fulfilled its duties to mitigate damages. We affirm the judgment of the trial court.

The court made the following findings of fact. Prior to May 2, 1992, the plaintiff issued a workers' compensation insurance policy to Mail Contractors of America, Inc. (Mail Contractors). On May 2, 1992, Robert Anastasio, an employee of Mail Contractors, was injured when he fell from a truck in the course of employment with the company. Anastasio began receiving workers' compensation benefits on May 3, 1992, and did not return to work after his injury. The claim qualified for transfer to the second injury fund (fund) under General Statutes § 31-349.

On May 18, 1992, the plaintiff hired the defendant to represent it and Mail Contractors before the workers'

compensation commission.[1] The defendant submitted the proposed voluntary agreement for transfer to Anastasio's attorney on January 15, 1993, with a request that the documents be signed and returned to him. When the defendant did not receive a response, he sent another agreement and request on September 16, 1993, which also was not returned. Both agreements set forth a date of incapacity of May 3, 1992. Finally, the defendant had the transfer agreement hand delivered to Anastasio's attorney for execution, and the defendant delivered it to the fund's office on February 2, 1994. The agreement, executed by the defendant on behalf of the plaintiff and approved by the workers' compensation commissioner (commissioner), identified May 3, 1992, as the "date when incapacity began."

On September 30, 1998, the commissioner initially found that the plaintiff had failed to meet the notice requirements of § 31-349 (b)[2] as it existed prior to July 1, 1995. Under the version of § 31-349 (b) in effect on the date of Anastasio's injury and at the time the fund received the voluntary agreement, notice of a claim for transfer to the fund was due on the ninetieth day prior to the payment of 104 weeks of compensation. The commissioner found that the plaintiff began paying compensation on May 3, 1992; therefore, notice of a claim for transfer to the fund was due on January 31, 1994, or two days prior to the date that the defendant filed the voluntary agreement for transfer.

The commissioner nonetheless concluded that the plaintiff's notice to the fund was timely via the retroactive application of Public Acts 1995, No. 95-277, § 3 (b)

---

[1] The defendant was an independent insurance adjuster and a licensed claims adjuster specializing in workers' compensation claims.

[2] General Statutes (Rev. to 1993) § 31-349 (b) provides in relevant part: "As a condition precedent to the liability of the second injury fund, the employer or his insurance carrier shall, ninety days before the expiration of the first one hundred four weeks of disability, notify the custodian of the second injury fund of the pending case . . . ."

(P.A. 95-277),[3] which amended § 31-349 effective July 1, 1995, and extended the time for filing a transfer claim to no later than ninety days *after* the completion of the first 104 weeks of disability. According to the commissioner, P.A. 95-277, § 3 (b) (1), lengthened the time allowed for the plaintiff's initial notification by 180 days. Despite this finding of timeliness, the commissioner concluded that the plaintiff's claim should be dismissed because, pursuant to P.A. 95-277, § 3 (b) (2) (E), the plaintiff had failed to pay the required $2000 notification fee, which would have completed notification to the fund. Further, the commissioner determined that because notification was left incomplete, the fund bore no responsibility for the claim. As a result, the plaintiff bore sole responsibility for satisfying Anastasio's claim.

On October 7, 1998, the plaintiff appealed to the workers' compensation review board (board), which affirmed the dismissal of the proposed transfer on the ground that notice to the fund was untimely. The plaintiff then appealed to this court, which dismissed the appeal as moot. *Anastasio* v. *Mail Contractors of America, Inc.*, 69 Conn. App. 385, 794 A.2d 1061, cert. denied, 261 Conn. 914, 915, 806 A.2d 1053 (2002).

In March, 1998, the plaintiff commenced litigation against the defendant, alleging negligence and breach of contract for his failure to file timely notice of the claim with the fund. On June 26, 2002, the plaintiff attempted to amend its complaint to include allegations

---

[3] Public Acts 1995, No. 95-277, § 3 (b), now codified in General Statutes § 31-349 (b), provides in relevant part: "As a condition precedent to the liability of the Second Injury Fund, the employer or its insurer shall: (1) Notify the custodian of the fund by certified mail no later than three calendar years after the date of injury or no later than ninety days after completion of payments for the first one hundred and four weeks of disability, whichever is earlier, of its intent to transfer liability for the claim to the Second Injury Fund; (2) include with the notification . . . (E) a two-thousand-dollar notification fee payable to the custodian to cover the fund's costs in evaluating the claim proposed to be transferred . . . ."

that the defendant failed to advise the plaintiff that it was required to pay the $2000 notification fee under the amended statute. The court denied the plaintiff's request to amend on the ground that the allegations were time barred and did not relate back to the original complaint as to timeliness.

Thereafter, on September 7, 2004, the court filed its memorandum of decision, finding in favor of the plaintiff as to liability only. The court allowed the parties to file briefs on the issues of damages and mitigation, which would be decided later. On January 20, 2005, the court filed its memorandum of decision awarding the plaintiff damages in the amount of $737,568 plus costs. On January 31, 2005, the defendant filed a motion for extension of time within which to appeal, which the court granted on February 1, 2005. On February 28, 2005, the defendant filed this appeal.

I

The defendant first claims that the court improperly found that he breached his duty of care and the parties' contract by not filing a timely notice of transfer to the fund. The defendant makes a two part argument concerning this claim. First, he argues that the court improperly considered evidence of whether notice was timely because the plaintiff was collaterally estopped from litigating this issue again. Second, he argues that the court also improperly considered evidence of whether notice was complete because the plaintiff was barred from amending its complaint to include additional allegations of incompleteness of notice. We are not persuaded by either argument.

A

The defendant claims that the court should not have considered evidence of whether notice was timely in determining that he breached his duty of care and the

parties' contract. Specifically, the defendant argues that this court previously determined in a separate case involving both the plaintiff and the defendant that notice was timely, and, therefore, the plaintiff was collaterally estopped from litigating this issue. Accordingly, the defendant argues, judgment should have been rendered in his favor. This argument, however, misconstrues the doctrine of collateral estoppel and the record in this case.

The following additional facts are necessary for an understanding of the defendant's claim. Following the decision of the board on October 7, 1998, affirming the commissioner's dismissal of the plaintiff's request to transfer Anastasio's disability claim to the fund, the plaintiff and the defendant[4] appealed to this court. *Anastasio* v. *Mail Contractors of America, Inc.*, supra, 69 Conn. App. 385. This court determined that notice was timely because the retroactive application of P.A. 95-277, § 3 (b), extended the time for filing by 180 days. Id., 387. Nonetheless, this court also concluded that it could not grant any practical relief because notice was incomplete and, thus, transfer of the claim was barred. Id., 400. Specifically, the plaintiff could not have been expected or required to pay $2000 when the notice was filed in February, 1994, because this notification fee did not become a requirement, pursuant to the retroactive application of P.A. 95-277, § 3 (b), until July, 1995. This court also concluded, however, that the fee should have been paid in July, 1995, when the amendment became effective, or at least within a reasonable period of time thereafter.[5] Id., 399–400.

[4] Both the plaintiff and the defendant in the present case were party defendants in *Anastasio*, as Fay was the licensed adjuster for Vanliner Insurance Company.

[5] This court stated: "Without deciding exactly what would have been a reasonable time here, we conclude that allowing more than six years to pass without paying the required fee was not reasonable." *Anastasio* v. *Mail Contractors of America, Inc.*, supra, 69 Conn. App. 399–400.

We identify the standard of review and legal principles that guide the resolution of the defendant's claim. "Whether the court properly applied the doctrine of collateral estoppel is a question of law for which our review is plenary. . . . Collateral estoppel means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." (Internal quotation marks omitted.) *LaBow* v. *Rubin*, 95 Conn. App. 454, 461, 897 A.2d 136 (2006). "To assert successfully the doctrine of issue preclusion, therefore, a party must establish that the issue sought to be foreclosed actually was litigated and determined in the prior action between the parties or their privies, and that the determination was essential to the decision in the prior case." (Internal quotation marks omitted.) *12 Havemeyer Place Co., LLC* v. *Gordon*, 93 Conn. App. 140, 153, 888 A.2d 141 (2006).

At the outset, we note that the issues litigated in the present case and in *Anastasio* were not the same. In *Anastasio*, this court addressed whether the employee's claim was transferable to the fund. We held that it was not, concluding that notice was timely under P.A. 95-277, § 3 (b), applied retroactively, but incomplete due to the failure to submit the $2000 notification fee. The defendant does not challenge this finding.

In the present case, the trial court addressed whether the defendant was liable for the fund's refusal to accept transfer. As part of its claim, the plaintiff argued that the defendant's failure to file under § 31-349 (b) as it existed in 1994 was a determining factor in the fund's refusal to accept transfer. Accordingly, the issues in the two cases—whether notice was timely under the retroactive application of P.A. 95-277, § 3 (b), in *Anastasio* and whether notice was timely under § 31-349 (b), in effect on the date of the injury in the present case—

are not the same, and the doctrine of collateral estopppel is inapplicable.

B

The defendant next claims that the court improperly considered evidence of whether notice was complete because, pursuant to a prior court order, the plaintiff was barred from amending its complaint to include additional allegations of incompleteness of notice. We are not persuaded.

The following additional facts are necessary to resolve the defendant's claim. In its original complaint, the plaintiff alleged that the defendant (1) failed to provide timely notice in writing to the custodian of the fund under the version of § 31-349 (b) in effect on the date of Anastasio's injury, (2) failed to inform the plaintiff of his failure to provide timely notice and (3) improperly informed the plaintiff that he had provided timely notice when he had not done so. On June 26, 2002, the plaintiff filed a request for leave to amend its complaint. The proposed amended complaint alleged that the defendant failed to advise the plaintiff (1) on how properly to proceed with, and to protect, its claim to the fund after notification was initially delivered to the fund and (2) that it was required to pay $2000 to the fund, pursuant to the retroactive application of P.A. 95-277, § 3 (b).

On July 9, 2002, the defendant filed an objection to the plaintiff's request for leave to amend its complaint, arguing that the amended allegations were barred by the statutes of limitation in General Statutes §§ 52-576 and 52-577. On December 20, 2002, the court issued its decision sustaining the defendant's objection to the plaintiff's request to amend. The court concluded that the proposed amended allegations set forth new causes of action that did not relate back to the original complaint and, therefore, were barred by the statutes of

limitation. Further, the court determined that the facts surrounding the defendant's alleged failure to advise the plaintiff to pay the $2000 notice fee to the fund pursuant to the retroactive application of P.A. 95-277, § 3 (b), were different from the facts surrounding his alleged failure to file timely notice prior to the enactment of P.A. 95-277, § 3 (b).

"As a threshold matter, we set forth the standard by which we review the trial court's determinations concerning the [admissibility] of evidence. The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion. . . . [Thus, our] review of such rulings is limited to the questions of whether the trial court correctly applied the law and reasonably could have reached the conclusion that it did." (Internal quotation marks omitted.) *Smith* v. *Greenwich*, 278 Conn. 428, 446–47, 899 A.2d 563 (2006).

We do not agree with the defendant that evidence of incompleteness was admitted improperly and reviewed by the court. On the contrary, the court was required to determine whether the defendant breached his duty of care and, if so, whether the breach caused the plaintiff's injury.[6] The court determined that the breach occurred when the defendant failed to file timely notice of transfer under the statute in existence at the time notice was filed on May 3, 1992. On this issue, the court stated, "The defendant knew or at least should have known that there was a timeliness issue. For example,

---

[6] "The essential elements of a cause of action in negligence are well established: duty; breach of that duty; causation; and actual injury. . . . If a plaintiff cannot prove all of those elements, the cause of action fails." (Citation omitted; internal quotation marks omitted.) *Roach* v. *Ivari International Centers, Inc.*, 77 Conn. App. 93, 99, 822 A.2d 316 (2003).

he is the one who recorded on the transfer agreement that the date of incapacity began on May 3, 1992. The evidence indicates that he knew that the filing was late."

In determining whether the breach caused the plaintiff's injury, the court reviewed evidence that notice was incomplete under the amended statute. Specifically, the court's analysis of incompleteness related to whether the defendant could have cured his initial breach. In regard to this issue, the court stated: "The July, 1995 amendments did provide an opportunity to rectify the earlier mistake, and the court finds that the plaintiff would have paid the $2000 fee had this need been recognized at that time. However, in 1995, the plaintiff would only have considered the specific filing requirements under the amended statute and the payment of the $2000 fee *if* the plaintiff or its attorneys knew and fully appreciated that there was an issue about the timeliness of the February, 1994 filing. They did not. [The defendant] failed to voice or acknowledge any problem with the filing at any time period sufficient for the plaintiff *to pay the fee within a reasonable time*." (Emphasis in original.) The court, therefore, properly considered evidence concerning the completeness of filing in order to determine whether the defendant's breach caused the plaintiff's injury.[7]

We also note that Connecticut evidence law encourages the admission of all relevant evidence that tends to aid the trier in the determination of an issue. Evidence

[7] In ruling on the parties' motions in limine prior to trial, the court also concluded that the decision sustaining the defendant's objection to the plaintiff's request to amend its complaint was not broad enough to preclude the admission of evidence concerning the completeness of the defendant's filing. In response to the assertion of the defendant's counsel that any allegation referring to the $2000 fee was barred by the statute of limitations, the court stated, "I didn't read [the] decision as being that broad. . . . I didn't read [the] decision as saying that any issues regarding the $2000 fee were outside the issues of the case."

is relevant and, therefore, admissible if it has "any tendency to make the existence of any fact that is material to the determination of the proceeding more . . . or less probable . . . ." Conn. Code Evid. § 4-1. "It is axiomatic that [e]vidence is admissible only to prove material facts, that is to say, those facts directly in issue or those probative of matters in issue; evidence offered to prove other facts is immaterial. . . . We note, however, that evidence is admissible if it has a tendency to support a fact relevant to the issues if only in a slight degree." (Citation omitted; internal quotation marks omitted.) *DiLieto* v. *County Obstetrics & Gynecology Group, P.C.*, 265 Conn. 79, 106, 828 A.2d 31 (2003). Accordingly, the court reasonably determined that evidence related to the completeness of filing was directly relevant to the allegations in the plaintiff's complaint.[8]

## II

The defendant next claims that the court improperly concluded that his conduct constituted professional negligence because the plaintiff failed to present expert testimony as to the applicable standard of care. We are not persuaded.

As an initial matter, we note that the court's determination of whether expert testimony was needed to support the plaintiff's claim of negligence against the defendant was a legal determination, and, thus, our

---

[8] As part of his claim, the defendant also argues that the plaintiff did not present a prima facie case for breach of duty of care and breach of contract because its complaint contained only allegations that he failed to file timely notice and not, in addition, that notice was incomplete. Although the defendant provides the proper legal standard of review on this issue, he does not provide any legal analysis in support thereof, but instead makes only a few conclusory assertions. Because the defendant has failed to brief this claim adequately, we decline to afford it review. See *In re Kachainy C.*, 67 Conn. App. 401, 413, 787 A.2d 592 (2001) ("[a]nalysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly" [internal quotation marks omitted]).

review is plenary. See *Neff* v. *Johnson Memorial Hospital*, 93 Conn. App. 534, 541, 889 A.2d 921 (2006). In a negligence action, such as the one brought by the plaintiff in this case, expert testimony will be required "[i]f the determination of the standard of care requires knowledge that is beyond the experience of a normal fact finder . . . ." (Internal quotation marks omitted.) *Keeney* v. *Mystic Valley Hunt Club, Inc.*, 93 Conn. App. 368, 375, 889 A.2d 829 (2006). "The requirement of expert testimony . . . serves to assist lay people, such as members of the jury and the presiding judge, to understand the applicable standard of care and to evaluate the defendant's actions in light of that standard. . . . Expert testimony is required when the question involved goes beyond the field of the ordinary knowledge and experience of judges or jurors." (Citation omitted; internal quotation marks omitted.) *Ahern* v. *Fuss & O'Neill, Inc.*, 78 Conn. App. 202, 208–209, 826 A.2d 1224, cert. denied, 266 Conn. 903, 832 A.2d 64 (2003).

"There is an exception to this rule, however, where there is such an obvious and gross want of care and skill that the neglect is clear even to a [layperson]." (Internal quotation marks omitted.) *Dubreuil* v. *Witt*, 80 Conn. App. 410, 420–21, 835 A.2d 477 (2003), aff'd, 271 Conn. 782, 860 A.2d 698 (2004). Thus, when the defendant's performance constituted such an obvious and gross want of care and skill as to fall within the exception to the expert witness requirement, the plaintiff is not required to present expert testimony to establish the proper standard of professional skill and care.

The defendant contends that the court should have required the plaintiff to present expert testimony regarding the standard of care for a workers' compensation adjuster in Connecticut. Specifically, the defendant submits that the topic of workers' compensation claims

and their adjustment are "topics requiring special expertise necessitating expert testimony." Further, the defendant argues that his conduct in regard to the filing of notice did not exhibit an obvious and gross want of care and skill such that the neglect is clear even to a layperson.

Although we agree with the defendant that certain topics related to the field of workers' compensation claims may require expert testimony, we cannot conclude that the topic at issue in this case, namely, whether the defendant filed a late notice that caused the plaintiff's injury, necessitates such a requirement. We also cannot agree with the defendant that his conduct did not amount to an obvious and gross want of care and skill such that the neglect is clear even to a layperson. On the contrary, the defendant's alleged want of care was so gross and obvious that its failure to comply with the standard of care was clear, even to a layperson.

In this instance, we are satisfied that the court was able to discern the various days on a calendar without the need for expert testimony. The court found that the defendant filed the plaintiff's claim three days after the date required. In addition, the defendant did not notify the plaintiff that the paperwork was filed late. The plaintiff was thus unable to mitigate economic damage incurred by the client due to the late filing. As our Supreme Court has stated, "[a]lthough expert testimony may be helpful in many instances, it is required only when the question involved goes beyond the field of ordinary knowledge and experience of the trier of fact. . . . The trier of fact need not close its eyes to matters of common knowledge solely because the evidence includes no expert testimony on those matters." (Internal quotation marks omitted.) *State* v. *Smith*, 273 Conn. 204, 211, 869 A.2d 171 (2005). The court, therefore, properly found that expert testimony was not required

to determine whether the defendant's performance complied with the requisite standard of care.[9]

## III

The defendant next claims that the court improperly applied the continuing course of conduct doctrine to his actions in finding that he breached his duty of care to the plaintiff. Specifically, the defendant argues that the initial act of negligence, the untimely filing of notice of transfer, occurred on February 2, 1994, and that § 52-577[10] bars this claim because suit was instituted in April, 1998, more than three years after the commission of this act. We do not agree.

We set forth the applicable standard of review. "The question of whether a party's claim is barred by the statute of limitations is a question of law, which this court reviews de novo. . . . The issue, however, of whether a party engaged in a continuing course of conduct that tolled the running of the statute of limitations is a mixed question of law and fact. . . . We defer to the trial court's findings of fact unless they are clearly erroneous." (Citations omitted.) *Giulietti* v. *Giulietti*, 65 Conn. App. 813, 833, 784 A.2d 905, cert. denied, 258 Conn. 946, 947, 788 A.2d 95, 96, 97 (2001).

General Statutes § 52-577 "is a statute of repose in that it sets a fixed limit after which the tortfeasor will

[9] In addition, we note that in its July 6, 2004 denial of the defendant's motion to reconsider the court's finding of liability, the court explicitly stated that expert testimony regarding the defendant's breach of duty of care was unnecessary. On this issue, the court stated, "Expert testimony is not necessary if it will not assist the trier of fact in understanding a fact in issue or when the issue is sufficiently gross or obvious so as to be within the field of knowledge of the trier. . . . The finding that [the defendant] breached his duty of care flows plainly and rationally from the evidence itself, much of which, at least on this issue, is undisputed and established by [the defendant's] testimony."

[10] General Statutes § 52-577 provides that "[n]o action founded upon a tort shall be brought but within three years from the date of the act or omission complained of."

not be held liable and in some cases will serve to bar an action before it accrues. . . . Nonetheless, [w]hen the wrong sued upon consists of a continuing course of conduct, the statute does not begin to run until that course of conduct is completed. . . . [I]n order [t]o support a finding of a continuing course of conduct that may toll the statute of limitations there must be evidence of the breach of a duty that remained in existence after commission of the original wrong related thereto. That duty must not have terminated prior to commencement of the period allowed for bringing an action for such a wrong. . . . Where [our Supreme Court has] upheld a finding that a duty continued to exist after the cessation of the act or omission relied upon, there has been evidence of either a special relationship between the parties giving rise to such a continuing duty or some later wrongful conduct of a defendant related to the prior act. . . .

"In sum, a precondition for the operation of the continuing course of conduct doctrine is that the defendant must have committed an initial wrong upon the plaintiff. . . . Second, there must be evidence of the breach of a duty that remained in existence after commission of the original wrong related thereto. . . . [T]hat continuing wrongful conduct may include acts of omission as well as affirmative acts of misconduct . . . ." (Citations omitted; internal quotation marks omitted.) *Giulietti* v. *Giulietti*, supra, 65 Conn. App. 833–35.

On appeal, the defendant claims that the continuing course of conduct doctrine does not apply to his actions because the record is devoid of any evidence that he committed an initial wrong upon the plaintiff. In addition, the defendant argues that he did not engage in any subsequent wrongful conduct, and, therefore, the court could not rely on the agency relationship between the plaintiff and the defendant as the only reason to

apply the continuing course of conduct doctrine. We are not persuaded by either of these arguments.

In this case, the court properly applied the continuing course of conduct doctrine. First, the court found that the defendant committed an initial wrong on the plaintiff on February 2, 1994, when he failed to file notice with the fund within the statutory time frame as it existed in 1994. Second, the court determined that the defendant, as the plaintiff's agent, had a continuing duty to the plaintiff to disclose all material facts relevant to the representation. Pursuant to this duty, the defendant had an obligation to inform the plaintiff of potential problems with the timeliness of the claim due to his late filing under the law as it existed in 1994. Third, the court concluded, on the basis of the plaintiff's complaint and the evidence produced at trial, that the defendant's failure to inform the plaintiff of this problem prevented it from taking steps provided by the 1995 amendment to § 31-349 to rectify the defendant's initial breach.[11] The defendant's subsequent omissions, therefore, related directly back to his previous wrong.

Finally, the defendant claims that because the date of breach, February 2, 1994, is readily identifiable, policy considerations do not justify the application of the continuing course of conduct doctrine. The defendant's argument is misguided. "The continuing course of conduct doctrine reflects the policy that, during an ongoing relationship, lawsuits are premature because specific tortious acts or omissions may be difficult to identify and may yet be remedied. . . . For example, the doctrine is generally applicable under circumstances where

---

[11] For example, an attorney, Jason M. Dodge, whose law firm was retained by the defendant to litigate Anastasio's claim on behalf of the plaintiff, testified that had his firm known that the notice had been filed late, it would have filed the $2000 fee. In addition, Dodge testified that his firm did not learn of the late notice until March, 1997, when the fund raised the late notice issue at a hearing.

[i]t may be impossible to pinpoint the exact date of a particular negligent act or omission that caused injury or where the negligence consists of a series of acts or omissions and it is appropriate to allow the course of [action] to terminate before allowing the repose section of the statute of limitations to run . . . ." (Internal quotation marks omitted.) *Rosato* v. *Mascardo*, 82 Conn. App. 396, 402, 844 A.2d 893 (2004).

In his argument, the defendant correctly asserts that the date of his *initial* wrong, February 2, 1994, is readily identifiable. The continuing course of conduct doctrine, however, addresses whether the date of *subsequent* wrongs, not initial wrongs, can be easily identified. As discussed, the defendant's negligence consisted largely of a series of omissions in failing to inform the plaintiff of his initial wrong. The exact date of such omissions, which occurred over a four year period subsequent to the initial wrong, are indeed difficult to pinpoint. The court, therefore, properly considered the relevant policy considerations when applying the continuing course of conduct doctrine to the defendant's actions.

After thoroughly reviewing the record and transcript, we cannot conclude that the court's finding that the defendant engaged in a continuing course of conduct that tolled the running of the statute of limitations for torts was clearly erroneous. The court, therefore, properly concluded that the plaintiff's negligence action was not barred by § 52-577.

## IV

The defendant next claims that the court improperly determined that the six year statute of limitations set forth in § 52-576[12] was applicable to the plaintiff's

[12] General Statutes § 52-576 (a) provides in relevant part: "No action for an account, or on any simple or implied contract, or on any contract in writing, shall be brought but within six years after the right of action accrues . . . ."

breach of contract claim, rather than the three year statute of limitations set forth in General Statutes § 52-581.[13] We disagree.

"If [General Statutes] §§ 6005 [now § 52-576] and 6010 [now § 52-581] are to be construed to make a harmonious body of law, it is necessary to restrict the latter . . . to executory contracts. Section [52-576] limits to six years actions on simple, that is parol, contracts; § [52-581] limits to three years actions on contracts not reduced to or evidenced by a writing, that is, contracts resting in parol . . . . Our Supreme Court has distinguished the statutes, however, by construing § 52-581, the three year statute of limitations, as applying only to executory contracts. . . . A contract is *executory* when neither party has fully performed its contractual obligations and is *executed* when one party has fully performed its contractual obligations." (Citations omitted; emphasis in original; internal quotation marks omitted.) *John H. Kolb & Sons, Inc.* v. *G & L Excavating, Inc.*, 76 Conn. App. 599, 609–10, 821 A.2d 774, cert. denied, 264 Conn. 919, 828 A.2d 617 (2003). The determinative question, therefore, is whether the contract between the plaintiff and the defendant was executory or executed.

On appeal, the defendant contends that the parties' agreement is governed by the three year statute of limitations under § 52-581. Specifically, the defendant claims that at the time of the alleged breach, February 2, 1994, the parties' contractual relationship was incomplete and that it continued through July, 1998. Therefore, the defendant argues, their ongoing relationship,

---

[13] General Statutes § 52-581 (a) provides: "No action founded upon any express contract or agreement which is not reduced to writing, or of which some note or memorandum is not made in writing and signed by the party to be charged therewith or his agent, shall be brought but within three years after the right of action accrues."

remained in the nature of an executory contract requiring the application of the three year statute of limitations. We are not persuaded.

The court held that the contract between the parties was executed because the plaintiff had completed all of its contractual obligations; therefore, § 52-576 and its six year statute of limitations applied.[14] Specifically, the court noted that the defendant was retained to represent the plaintiff's interests in regard to Anastasio's claim and that the defendant was to be compensated for those services. The defendant billed for his services regularly, and there was no dispute that he was fully and timely paid. Once the bill was paid, the court determined, the plaintiff had fully completed its obligation under the parties' agreement.

The court also noted that the fact that the parties had a continuing and ongoing relationship was not dispositive. Rather, because either party was free to terminate the relationship at any time, the defendant was not required to perform any more work. The plaintiff, therefore, was obligated to pay the defendant only for the services rendered. Because the plaintiff paid for these services on a timely basis, it fully completed its obligations, and, for purposes of the statute of limitations, the contract was not executory.

The court's finding that the plaintiff had completed all of its contractual obligations to the defendant was not clearly erroneous. As a matter of law, the contract was not executory in nature, and the six year statute of limitations in § 52-576 applied. We agree, therefore, with the court's legal conclusion that the plaintiff's

---

[14] In its memorandum of decision, the court stated that it "rejects the defendant's argument and finds that the six year statute of limitation under . . . § 52-576 controls the plaintiff's contract claim. This action is timely under this statute because suit was instituted within six years of February, 1994, the earliest date on which the cause of action could have accrued."

claims were not barred by the statute of limitations in § 52-581.

V

The defendant finally claims that the court improperly determined that the plaintiff made reasonable efforts to mitigate damages. Specifically, the defendant argues that the court's conclusion was clearly erroneous because there was evidence that supports a finding that the plaintiff could have done more to mitigate its damages. We are not persuaded.

Before addressing the merits of the defendant's claim, we set forth the applicable standard of review. "We have often said in the contracts and torts contexts that the party receiving a damage award has a duty to make reasonable efforts to mitigate damages. . . . What constitutes a reasonable effort under the circumstances of a particular case is a question of fact for the trier. . . . Furthermore, we have concluded that the breaching party bears the burden of proving that the nonbreaching party has failed to mitigate damages." (Internal quotation marks omitted.) *Gilliard* v. *Van-Court Property Management Services, Ltd.*, 63 Conn. App. 637, 644–45, 777 A.2d 745 (2001). The defendant thus bears the burden of proving that the plaintiff failed to make reasonable efforts to mitigate the amount of damages.

The defendant argues that the plaintiff's decision to litigate the transfer of the claim and not to settle with Anastasio at various times from 1998 to 2001 constituted an unreasonable course of conduct that aggravated its damages. Specifically, the defendant contends that the plaintiff's failure to settle the claim earlier for lower amounts was unreasonable because of the low likelihood of prevailing in *Anastasio* against the fund. In addition, the defendant claims that the decision not to pay the $2000 fee to effectuate the transfer of the claim to the fund was unreasonable. We do not agree with

either argument that the evidence supports a conclusion that the plaintiff failed to take reasonable steps to mitigate damages under the circumstances.

First, the court properly found that the plaintiff's decision to litigate against the fund was not an unreasonable course of action. Until this court determined in *Anastasio* in 2002 that the claim was not transferable to the fund, the plaintiff's injury was neither clear nor established. Had the plaintiff been successful in its initial litigation against Anastasio, neither it nor the defendant would have been liable for any damages. In its January 20, 2005 memorandum of decision on damages, the court noted the difficult position faced by the plaintiff in determining whether to settle or to litigate the transfer of the claim, stating: "An evaluation of whether to settle or prosecute a case often involves such subtle and judgmental considerations, and the court cannot say that under the circumstances here, especially considering the novel issues presented in the fund litigation, that the failure to settle the case constitutes a failure to mitigate damages."[15]

Second, the court properly found that the plaintiff's decision not to pay the $2000 fee also was not an unreasonable approach to mitigate damages. The court noted that the defendant, as part of his agreement with the plaintiff, was required to file notice of transfer and that the defendant did not advise the plaintiff about the need to pay the fee in light of his 1994 filing of the notice of transfer. Although the plaintiff did not pay the $2000

[15] In its memorandum of decision on damages, the court also noted, "If the plaintiff's action against the fund [in *Anastasio*] had been successful, the entire liability would have been transferred to the fund, resulting in the ultimate mitigation in favor of both the plaintiff and the defendant. On the other hand, if the plaintiff had settled Anastasio's claim before a final judgment in this action, the plaintiff would have been exposed to a claim from the defendant that the plaintiff had abandoned the possibility of having the entire claim transferred to the fund or that the plaintiff had waived its claims against the defendant."

in 1997 when it became aware of the fee, the defendant has not presented evidence that the fund was legally obligated to accept the fee at such time. As the court noted, "Indeed, this court has found that any tender of the fee two years after the statutory amendments would have been too long a delay."

In sum, the defendant has not met his burden to prove that the plaintiff failed to mitigate damages. After a careful review of the record, we conclude that the evidence before the court demonstrated that the plaintiff's conduct was reasonable under the circumstances. The court's factual findings, therefore, were not clearly erroneous. Accordingly, we decline to disturb the court's orders.

The judgment is affirmed.

In this opinion the other judges concurred.