JOHN AHERN ET AL. *v.* FUSS AND O'NEILL, INC., ET AL.
(AC 22850)

Lavery, C. J., and Flynn and Peters, Js.

Argued May 8—officially released July 22, 2003

*Steven J. Errante*, with whom, on the brief, was *Hugh F. Keefe*, for the appellant (plaintiff Somers Mill Associates, Inc.).

*Deborah Monteith Neubert*, with whom, on the brief, was *Gretchen L. Grosick*, for the appellee (named defendant).

*David M. Sheridan*, with whom, on the brief, were *Denise Martino Phelan* and *Joseph M. Busher*, for the appellee (defendant town of Somers).

*Michael J. Byrne*, for the appellee (defendant Lenard Engineering, Inc.).

PETERS, J. Seven years after the purchase of a building on the Scantic River, in Somers, for possible conversion into a residential development, the Federal Emergency Management Administration revised a flood insurance map so that the property became unsuitable for the proposed development. The map revision resulted from the belated discovery of a discrepancy in previously existing documents describing the flood plain. The owner sought to recoup its losses from two engineering firms that, while hired to evaluate the technical feasibility of the proposed development, did not question the reliability of the flood map that existed when they performed their services for the owner. The principal issue in this case is whether, in its pursuit of a claim of professional malpractice, the owner adequately disclosed the proposed testimony of an expert witness about the standard of care applicable to the professional services of the engineering firms. The trial court rendered judgments in favor of the engineering firms and, in part, in favor of an additional defendant, the town of Somers (town), against which the owner had brought other claims of misconduct. The owner has appealed. We affirm the judgments rendered by the trial court.

On June 11, 1996, the plaintiff Somers Mill Associates, Inc.,[1] filed a complaint against the defendants Fuss & O'Neill, Inc. (Fuss & O'Neill), and Lenard Engineering, Inc. (Lenard), for engineering malpractice.[2] In the same complaint it charged the town with having created a nuisance and with having violated the plaintiff's consti-

---

[1] In its brief on appeal, the plaintiff Somers Mill Associates, Inc., states that although four additional individual plaintiffs were named in the complaint, the trial court, on November 8, 2001, granted a motion to dismiss the claims of these individuals. The corporate plaintiff is, therefore, the only remaining plaintiff, and we refer to it as the plaintiff in this opinion.

[2] These claims are contained in counts one and two of the complaint.

tutional rights under 42 U.S.C. § 1983.[3] Each of the defendants, after denying liability and filing special defenses, moved for summary judgment. The trial court granted each motion.

The plaintiff's appeal challenges the validity of the judgments rendered by the trial court. The appeal is governed by a well established standard of appellate review. "Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party moving for summary judgment has the burden of showing the absence of any genuine issue of material fact and that the party is, therefore, entitled to judgment as a matter of law. . . . Our review of the trial court's decision to grant the defendant's motion for summary judgment is plenary. . . . On appeal, we must determine whether the legal conclusions reached by the trial court are legally and logically correct and whether they find support in the facts set out in the memorandum of decision of the trial court." (Internal quotation marks omitted.) *Tarnowsky* v. *Socci*, 75 Conn. App. 560, 564, 816 A.2d 728, cert. granted on other grounds, 263 Conn. 921, 822 A.2d 245 (2003); see also *W & D Acquisition, LLC* v. *First Union National Bank*, 262 Conn. 704, 709, 817 A.2d 91 (2003).

---

[3] These claims are contained in counts four and six of the complaint. Although other counts against the town have not yet been resolved, the plaintiff successfully moved for permission to file an immediate appeal pursuant to Practice Book § 61-4. The remaining counts against the town contain claims of negligent misrepresentation (count three), intentional misrepresentation (count five), and intentional interference with federal rights (count seven).

I

## CLAIMS AGAINST THE ENGINEERING FIRMS

The plaintiff claims that Fuss & O'Neill and Lenard (the engineering defendants) each engaged in professional malpractice in their feasibility studies to determine whether the plaintiff's property, known as the Somers Mill, could be converted into a residential development. Specifically, the plaintiff alleges that each of the defendant engineering firms negligently represented that no floor of the building above the basement was within the 100 year flood plain. According to the plaintiff, these representations were negligent because they failed to disclose a possible error in the federal flood map that was then the official document describing the flood plain.

The engineering firms denied having made the representations. They also challenged the assertion that they had a duty to investigate the reliability of the flood map.

Many of the relevant facts are undisputed. In 1988, the plaintiff purchased the Somers Mill, a commercial building on Maple Street in Somers. Because the Somers Mill straddles the Scantic River, the plaintiff knew that the property was at risk of flooding.

In the spring of 1989, the plaintiff hired Fuss & O'Neill to perform engineering services to determine the feasibility of renovating the Somers Mill for residential purposes. Fuss & O'Neill performed some preliminary survey work for the plaintiff, investigated wetlands-related issues and gathered materials for later design work. Some six months later, the plaintiff terminated its relationship with Fuss & O'Neill because of dissatisfaction with the performance of Fuss & O'Neill on an unrelated project. At that time, Fuss & O'Neill had not yet completed a boundary or topographic survey, had not issued any documents to the plaintiff and had not

generated any plans for the plaintiff's review. Fuss & O'Neill was never paid for the work it had done.

The plaintiff alleges, however, that, in June, 1989, one of Fuss & O'Neill's employees represented to the plaintiff that the first floor of the Somers Mill building was located at an elevation of approximately 182 feet, that the 100 year flood level at the face of Somers Mill was approximately 180 feet, and that the first floor was therefore above the 100 year flood elevation and usable for residential purposes. The plaintiff alleges that Fuss & O'Neill's representation was actionable as a negligent misrepresentation.

In early January, 1990, the plaintiff hired Lenard to prepare a complete site analysis, and to review and to do a feasibility study of the floodway to determine the 100 year flood level as it would affect the Somers Mill's floors. Lenard's analysis showed that the first floor of the Somers Mill was outside or above the 100 year flood level. In light of Lenard's positive report, the plaintiff decided to pursue residential development of the Somers Mill. The plaintiff alleges that Lenard's analysis was also actionable as a negligent misrepresentation.

The plaintiff then hired Doane Engineering (Doane),[4] which prepared a site plan for the development of 102 residential units in the Somers Mill. On March 20, 1991, Doane submitted this site plan to the town planning commission with an application for a special use permit. As did its predecessors, Doane relied on the then existing flood map to support its representation that the Somers Mill could be used for residential purposes.

On July 11, 1991, a Doane engineer alerted the Boston office of the Federal Emergency Management Administration to a discrepancy between the base flood elevation of 180 feet shown on the flood map and the base

---

[4] Doane Engineering is not a defendant in this case.

flood elevation of 188.7 feet shown on a flood insurance study. Doane did not, however, alter its application for a special use permit.

On October 7, 1991, the planning commission denied the plaintiff's application for a special use permit on grounds unrelated to the flood plain problem. After lengthy unsuccessful settlement efforts, the plaintiff's appeal from the commission's denial resulted, on March 23, 1995, in a remand of the application to the town for reconsideration.

On June 16, 1995, the Federal Emergency Management Administration issued a formal "Letter of Map Revision" for the area that includes the Somers Mill. The revision raised the original 100 year flood elevation from 180 feet to 189 feet. The Letter of Map Revision acknowledged that the revision was issued to correct the Administration's mistake in transferring data from its flood study to its flood map. Under the revised flood map, the first floor of the Somers Mill was below the base flood elevation.

Although the planning commission nevertheless approved the plaintiff's conversion plan on October 2, 1995, the approval was contingent on a revision of the site plan so that no residential floor of the building would be below the 100 year flood elevation. The plaintiff decided that the required revision made it unfeasible to pursue residential development of the Somers Mill. It then brought the present action seeking recovery of its losses, which allegedly were caused by the negligent misrepresentations of the defendant engineering firms.

The plaintiff recognized that its claims against these defendants involved issues of professional malpractice on which it could not prevail without presenting expert evidence. "The requirement of expert testimony . . . serves to assist lay people, such as members of the jury and the presiding judge, to understand the applicable

standard of care and to evaluate the defendant's actions in light of that standard." *Davis* v. *Margolis*, 215 Conn. 408, 416, 576 A.2d 489 (1990). Expert testimony is required "when the question involved goes beyond the field of the ordinary knowledge and experience of judges or jurors." *Bader* v. *United Orthodox Synagogue*, 148 Conn. 449, 454, 172 A.2d 192 (1961); accord *Santopietro* v. *New Haven*, 239 Conn. 207, 226–27, 682 A.2d 106 (1996); *Matyas* v. *Minck*, 37 Conn. App. 321, 326–27, 655 A.2d 1155 (1995).

To satisfy this requirement, the plaintiff filed a disclosure of the expert witnesses it intended to call to testify at trial. See Practice Book § 13-4 (4). The only expert whom the plaintiff planned to present on the subject of engineering malpractice was Edward Chiang, a professional engineer. The plaintiff disclosed that Chiang was expected to testify about "the standard of care of engineers in performing professional services and about hydraulic engineering as it relates to the subject property and the Scantic River." The disclosure stated that he would testify that a reasonably competent engineer engaged to plan the development of the Somers Mill would have determined that the flood levels of the river severely impacted and limited the development of the property and would have informed the plaintiff of that risk.[5]

In a subsequent written report, Chiang expressed his opinion that a competent engineer would have discov-

---

[5] The disclosure further indicated the substance of facts and opinions that Chiang would present. "Dr. Chiang is expected to testify that an investigation of the river flow and flood levels of the Scantic River was a paramount matter in planning the development of the subject property. He is also expected to testify that a reasonably competent engineer engaged to plan the development of the subject property would have determined that the flood levels of the Scantic River severely impacted and limited the development of the property and would have informed the client promptly of that problem. Dr. Chiang is also expected to testify that the bridge upstream of the project substantially restricts the flow of the river during major floods which creates a serious flooding problem for the subject property."

ered the discrepancy in the base flood level as shown in the floodway map and the flood insurance study. Chiang further opined that, even without this discrepancy, a competent engineer would have performed a detailed analysis to confirm the flood level at the Somers Mill.

At his deposition, Chiang described himself as an expert in the area of hydraulics and storage reservoirs. He had been hired, he testified, to evaluate the flood level and to ascertain the potential impact of a flood on the Somers Mill. He also had undertaken to determine what measures could possibly lower the flood level.

Chiang stated that he never had inquired into the applicable standards of professional practice for the engineering firms that rendered engineering services for the development of the Somers Mill project. He had no opinion about whether either of the defendant engineering firms had violated the applicable standard of care for a professional engineering firm. With respect to Fuss & O'Neill, he testified: "I'm not quite sure what exactly they did, so it really [is] difficult for me to give you my opinion about what they did. I only can give you what I think should be done." He took the same position with respect to Lenard. He did not know "who did what" at the Somers Mill.

The defendants objected to the lack of specificity in the disclosure of Chiang's proposed testimony. They stressed that Chiang had no knowledge of their engineering operations or of the scope of the work that they had agreed to undertake and had performed. They emphasized Chiang's lack of knowledge about the standard of care for engineers engaged in determining the feasibility of a proposed development project.

On February 2, 2001, the trial court issued an order to the plaintiff to provide detailed signed statements of

the specific opinion or opinions of the expert and of the bases for those opinions. The court warned that "[a]n opinion not in the statement will not be admitted at the trial." The plaintiff has not challenged the validity of this court order.

In their motions for summary judgment, the defendant engineering firms argued that the plaintiff had not presented a sufficient basis for the presentation of Chiang's expert testimony at trial. The plaintiff virtually concedes that the disclosures of Chiang's proposed testimony lack precision. It maintains, however, that it should be afforded the opportunity to flesh out these disclosures at trial by posing hypothetical questions to Chiang that would describe the underlying facts. Under the circumstances of this case, we disagree.

It is true that, at trial, an expert ordinarily may express his opinion in response to a hypothetical question that is based on the essential facts in the case. Conn. Code Evid. § 7-4 (c); see, e.g., *Keeney* v. *L & S Construction*, 226 Conn. 205, 213, 626 A.2d 1299 (1993). The issue in this case is whether this rule applies in the face of a challenge to the adequacy of the pretrial disclosure of an expert witness. To put it differently, can a plaintiff cure defects in pretrial disclosure by hypothetical questions at trial? *Keeney* did not resolve this issue because, in that case, no one challenged the qualifications of the expert witnesses. Id.

Several decisions of this court have affirmed trial court decisions that limited expert testimony to the subject matter that had been expressly disclosed in pretrial reports and depositions. See e.g., *Ciarlelli* v. *Romeo*, 46 Conn. App. 277, 280–81, 699 A.2d 217, cert. denied, 243 Conn. 929, 701 A.2d 657 (1997); *Kemp* v. *Ellington Purchasing Corp.*, 9 Conn. App. 400, 404–405, 519 A.2d 95 (1986); *Sturdivant* v. *Yale-New Haven Hospital*, 2 Conn. App. 103, 106–108, 476 A.2d 1074 (1984).

These holdings are particularly persuasive in this case in light of the unchallenged order of the trial court that any expert opinion not disclosed pretrial would not be admitted at trial.

We conclude that the trial court properly granted the motions for summary judgment filed by Fuss & O'Neill and Lenard. To prevail against these defendants, the plaintiff had to present expert evidence at trial. To present such evidence at trial, the plaintiff had to make a pretrial disclosure identifying its proposed expert. This disclosure had to describe the substance of the expert's opinion about the manner in which these defendants' professional conduct deviated from the standard of care of engineers hired to make a feasibility study of the plaintiff's plan for converting the Somers Mill into a residential facility. Once the court required the plaintiff to produce a more specific expert opinion, the plaintiff had to disclose an expert's statement that these defendants acted negligently in failing to discover a discrepancy between a governmental flood plain study and a governmental flood plain map. In the absence of the required disclosures, the trial court properly rendered judgment for these defendants.

II

CLAIMS AGAINST THE TOWN

The plaintiff has asserted two claims against the town that are presently reviewable.[6] In count four of its complaint, the plaintiff alleged that the town had created an absolute private nuisance by its erection and maintenance of the Maple Street bridge. The bridge is immediately upstream from the Somers Mill. In count six of its complaint, the plaintiff alleged that the town had violated 42 U.S.C. § 1983 by changing its position about the flood level of the Scantic River.

---

[6] See footnote 3.

The trial court granted the town's motion for summary judgment on the nuisance claim because the plaintiff's expert, Edward Chiang, testified at his deposition that removal of the Maple Street bridge would not reduce the flood level at the Somers Mill. Although the plaintiff's complaint alleged, in count four, paragraph eleven, that "[i]n the absence of the Maple Street Bridge, the 100 year flood elevation at the upstream face of the Somers Mill would be at a level which would permit its use and development for residential purposes," Chiang stated at his deposition that he did not agree with that allegation.

The plaintiff argues that Chiang's statement at his deposition was not definitive because, in a written report, Chiang had stated that "[t]he flow velocity of a 100-year return frequency passing through the Maple Street Culverts is too high. The Maple Street Bridge and the Somers Mill Building are located too close to one another. Moreover, the crowns (i.e., ceilings) of the arch culverts and the culverts beneath the Somers Mill Building are at different elevations. As a result, the high velocity associated with the flood flow would generate excessive turbulence in the area between the Maple Street Bridge and the Somers Mill Building which may cause serious damage to the building under flood conditions." Chiang opined that the flood level at the Somers Mill could be reduced by "increasing the cross-sectional flow area of the Maple Street Culverts to 945 square feet and the culvert beneath the Somers Mill Building to 360 square feet." According to the plaintiff, Chiang's report should be construed to state that the removal of the Maple Street bridge is necessary but not sufficient to lower the flood elevation to the point at which development of the Somers Mill would be legally permissible.

The plaintiff argues, therefore, that even if the Maple Street bridge is not the sole proximate cause of the

plaintiff's problem, a jury reasonably could find that it is a substantial factor in the flood level at the Somers Mill. For this reason, the plaintiff claims that the trial court improperly granted the town's motion for summary judgment with respect to count four.

The town maintains, to the contrary, that the court properly granted its motion for summary judgment. It argues that the plaintiff is bound by the allegations of causation that were stated in its complaint. The plaintiff did not amend, or seek permission to amend, its complaint to incorporate a claim that the Maple Street bridge was a substantial factor in the losses that the plaintiff has suffered. Its "substantial factor" argument therefore lacks a procedural base.

We agree with the town that a party cannot present a case to the trial court on one theory and then seek appellate relief on a different one. *Sorrentino* v. *All Seasons Services, Inc.*, 245 Conn. 756, 770, 717 A.2d 150 (1998); see *Treglia* v. *Zanesky*, 67 Conn. App. 447, 457–58, 788 A.2d 1263 (2001), cert. denied, 259 Conn. 926, 793 A.2d 252 (2002). The difference between "sole proximate cause" and "substantial factor" analysis is not an immaterial variance as that phrase is used in Practice Book § 10-62.[7]

We conclude, therefore, that the trial court properly granted the town's motion for summary judgment on the plaintiff's claim of nuisance. The plaintiff has cited no case that permits an end run around a summary judgment on the basis of a claim that was not advanced in the pleadings that underlay the judgment rendered by the court.

The plaintiff's alternate claim against the town alleges, in count six of the complaint, that the town

---

[7] Indeed, Practice Book § 10-62 pertains only to a request to amend a complaint. The plaintiff never pursued that route at trial.

deprived the plaintiff of its constitutional right to due process of law in violation of 42 U.S.C. § 1983. The § 1983 claim has two parts. According to the plaintiff, the town is liable for the misconduct of the town sanitarian, who intentionally or recklessly misrepresented the flood level at the Somers Mill to be 180 feet even though he knew that the flood level was substantially higher. In addition, the town is liable for its policy decision to change its position with respect to the flood level to 189 feet so as to conform with the federal flood map as revised in 1995.

The trial court concluded that the town was entitled to summary judgment on this count because the plaintiff had not alleged that the town deliberately had chosen, as a matter of policy, to revise the flood plain map. The town's adoption of the revised map did not reflect its own policy decision to change the flood map. It was not the town's prerogative to set, adopt, promulgate or otherwise establish the 100 year flood elevation. It was, instead, the Federal Emergency Management Administration that established the revised 100 year flood elevation.

The trial court properly relied on *Tedesco* v. *Stamford*, 215 Conn. 450, 576 A.2d 1273 (1990), on remand, 24 Conn. App. 377, 588 A.2d 656 (1991), rev'd, 222 Conn. 233, 610 A.2d 574 (1992), in which our Supreme Court held that "[m]unicipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by city policymakers." (Internal quotation marks omitted.) Id., 456–57. The trial court noted that the plaintiff had failed to identify the alternatives the town should have considered before it acquiesced in the decision of the Federal Emergency Management Administration.

The plaintiff concedes that it was the Federal Emergency Management Administration and not the town

that had the responsibility to publish a correct flood map to establish the 100 year flood elevation. It argues, however, that the town had the option whether to participate in the National Flood Insurance Program. That choice, according to the plaintiff, is sufficient underpinning for its § 1983 claim.[8] Even if this were a meaningful choice, the plaintiff has not alleged that the town's election to participate in the National Flood Insurance Program was a new decision or a change of policy that occurred in 1995. The plaintiff was on notice of the town's policy when it bought the Somers Mill in 1988.

In the absence of any allegations that the town had adopted a policy or continued a custom that resulted in a deprivation of the plaintiff's constitutionally protected property interest, there is no basis for the plaintiff's § 1983 claim. We conclude, therefore, that the trial court properly granted summary judgment in favor of the town on count six.

The judgments are affirmed.

In this opinion the other judges concurred.

---

[8] In its primary appellate brief, the plaintiff also argued that, because it had made its § 1983 claim in the form of alleged intentional or reckless misrepresentation, the town had a choice whether to tell the truth or to lie. That argument is frivolous.