# UTICA MUTUAL INSURANCE COMPANY *v.*
# PRECISION MECHANICAL SERVICES, INC.
## (AC 30676)

DiPentima, Robinson and Hennessy, Js.*

---

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

Argued March 16—officially released July 13, 2010

*Frederic S. Ury*, with whom, on the brief, were *Neal L. Moskow* and *Deborah M. Garskof*, for the appellant (defendant).

*Frank F. Coulom, Jr.*, for the appellee (plaintiff).

### Opinion

HENNESSY, J. In this negligence action, the defendant, Precision Mechanical Services, Inc., appeals from the judgment of the trial court, rendered after a trial to the court, in favor of the plaintiff, Utica Mutual Insurance Company. The court found that the defendant was negligent and awarded the plaintiff damages in the amount of $664,373.02, plus interest at 6 percent from

July 9, 1997, when the plaintiff received a subrogation receipt. On appeal, the defendant claims that the court improperly (1) concluded that the plaintiff established the applicable standard of care in the absence of expert testimony, (2) granted the plaintiff's motions in limine to preclude the defendant's expert witnesses from testifying and (3) concluded that the plaintiff established its damages to a reasonable degree of certainty under the circumstances. We affirm the judgment of the trial court.

The record reveals the following facts and procedural history that are relevant to our resolution of the defendant's appeal. On August 9, 1996, Kirk Holmes, an employee of the defendant,[1] was sent to the Commons Condominium Complex (Commons)[2] in Branford to install a shower diverter in unit 10C. Holmes was a licensed plumber at the time of the project, having earned his license in the late 1980s or early 1990s, and had performed shower diverter replacements prior to his job at the Commons.

Holmes was alone in the unit when he began working. In order to complete the job, he was required to first remove the existing faucet valves before replacing them with the shower diverter that contained only a single valve.[3] To allow access to the pipes in the wall cavity, he widened a hole in the shower wall that was located below waist level. The widened hole's new dimensions were approximately thirteen inches by six to seven inches.

Aware that the water in the building had been shut off earlier, Holmes opened the faucets and drained any

[1] The parties stipulated that on August 9, 1996, Holmes was employed by the defendant.

[2] The Commons consists of three buildings—buildings A, B and C. Building C is three stories high.

[3] A shower diverter connects the hot and cold water lines into a single device, allowing the water to mix before it goes into the shower lead and eventually to the shower head.

residual water left in the pipes. Next, he cut the hot and cold water lines, as well as the lead to the shower head, to allow him freely to remove the old diverter. To install the shower diverter, he needed to use a plumber's torch that had a two inch flame to solder the hot water connection, the cold water connection and the lead to the new diverter.

Before Holmes began soldering, he got on his knees, reached his arms through the hole, grabbed paper-backed insulation and pulled it out through the hole. Holmes wanted the area in which he was going to solder to be clear of insulation because he was aware that it was combustible material. Given the hole's placement below waist level and his consequent inability to look up into the wall, however, Holmes could not make a complete inspection of the wall cavity. Although he testified that he checked for insulation with his flash-light, he did not use his mirror to confirm the absence of insulation in areas he could not see and did not feel or remove any insulation below the valve. In fact, Holmes testified, insulation was probably left behind in the wall regardless of his removal efforts. Despite his awareness that the insulation in the wall was com-bustible, he began soldering.

A short time later, he noticed a glow on the diverter in the wall above him. Holmes testified that in response, he sprayed his fire extinguisher through the hole and into the wall. He next punched a hole in the wall at the ceiling level where he observed the insulation on fire. Because the fire had already spread to the next floor, he called 911 and ran upstairs and notified the occupants to get out of the building.

The plaintiff filed a complaint on July 24, 1998, alleg-ing that the defendant was negligent in failing (1) to exercise reasonable care when operating the plumber's torch, (2) to take reasonable precautions to protect

against the ignition of combustible materials in the area where the welding operations occurred and (3) to comply with the applicable codes or standards in using the torch. The plaintiff alleged that the resulting damage to the Commons was caused by the defendant's failure to perform its services in a reasonable and workmanlike manner. Because the plaintiff insured the Commons for the loss caused by the fire, it was subrogated to the Common's rights. In its answer filed on March 17, 1999, the defendant denied the negligence claim but did not raise any special defenses.

On October 30, 2007, the plaintiff filed motions to preclude the defendant from offering the expert testimony of Kevin Wypychoski, the defendant's president and chief executive officer, and Harwood W. Loomis, an architect licensed in Connecticut with a consulting practice in building codes, who had issued a report. Before the trial commenced, the court granted the plaintiff's motion in limine with regard to Wypychoski, concluding that he could, however, testify as a fact witness. The court allowed the testimony of Loomis, subject to the plaintiff's renewing its motion at the close of evidence but ultimately granted the plaintiff's motion and, thus, did not consider Loomis' testimony in arriving at a decision. The trial occurred over three days—from October 31 to November 2, 2007. The following people testified: Peter Buonome, a marshal with the Branford fire department; Holmes; Kenneth Wheeler, a claims adjuster representing the plaintiff; Donald McCarthy, a president of the Commons at the time of the fire; and Loomis.

The court issued its memorandum of decision on August 12, 2008. In its decision, the court concluded that the plaintiff paid $664,373.02 to the Commons to cover its loss from the fire and that this was a fair and reasonable amount for which the plaintiff received a subrogation receipt. The court rejected as without merit

the defendant's argument that the damages amount was a mere approximation. After providing its reasoning for precluding Loomis' expert testimony, the court then went on to determine, on the basis of the evidence adduced at trial, that "the defendant was negligent in one or more of the following respects in that Holmes, the employee of the defendant, was negligent in that he failed to exercise reasonable care in operating the welding torch and in that he failed to protect against ignition of the combustible materials in the area where he was welding. Holmes should have ensured that all of the insulation was removed before he started to solder. The court concludes that the defendant's employee was the proximate cause of the fire. The court, therefore, awards judgment in favor of the plaintiff to recover the sum of $664,373.02 plus interest at 6 [percent] from the date of July 9, 1997, when [the plaintiff] received the subrogation receipt." In turn, the defendant filed the present appeal. Additional facts will be set forth as necessary.

I

The defendant first claims that the plaintiff's failure to present expert testimony at trial establishing the appropriate standard of care of a professional plumber under similar circumstances requires reversal. More specifically, the defendant argues that the replacement of shower diverters and the soldering of pipes is a matter outside of the common layperson's knowledge and, consequently, expert testimony was required to establish the appropriate standard of care[4] owed by Holmes.[5] We are not persuaded by the defendant's arguments.

---

[4] The defendant does not challenge on appeal the court's conclusion regarding causation.

[5] Professional negligence frequently is defined as "the failure of one rendering professional services to exercise that degree of skill and learning commonly applied under all the circumstances in the community by the average prudent reputable member of the profession with the result of injury, loss, or damage to the recipient of those services . . . ." (Internal quotation

We begin by setting forth the relevant parameters under our negligence jurisprudence. "The essential elements of a cause of action in negligence are well established: duty; breach of that duty; causation; and actual injury. . . . Contained within that first element, duty, there are two distinct considerations. . . . First, it is necessary to determine the existence of a duty, and [second], if one is found, it is necessary to evaluate the scope of that duty. . . . We sometimes refer to the scope of that duty as the requisite standard of care." (Citations omitted; internal quotation marks omitted.) *LePage* v. *Horne*, 262 Conn. 116, 123, 809 A.2d 505 (2002).

The court's determination of whether expert testimony was needed to support the plaintiff's claim of negligence against the defendant was a legal determination, and, thus, our review is plenary. See *Neff* v. *Johnson Memorial Hospital*, 93 Conn. App. 534, 541, 889 A.2d 921 (2006). In a negligence action such as the one brought by the plaintiff in this case, expert testimony will be required "[i]f the determination of the standard of care requires knowledge that is beyond the experience of a normal fact finder . . . ."[6] (Internal quotation marks omitted.) *Keeney* v. *Mystic Valley Hunt Club, Inc.*, 93 Conn. App. 368, 375, 889 A.2d 829 (2006). "The requirement of expert testimony . . . serves to assist

marks omitted.) *Keeney* v. *Mystic Valley Hunt Club, Inc.*, 93 Conn. App. 368, 375, 889 A.2d 829 (2006).

[6] "There is an exception to this rule, however, where there is such an obvious and gross want of care and skill that the neglect is clear even to a [layperson]. . . . Thus, when the defendant's performance constituted such an obvious and gross want of care and skill as to fall within the exception to the expert witness requirement, the plaintiff is not required to present expert testimony to establish the proper standard of professional skill and care." *Vanliner Ins. Co.* v. *Fay*, 98 Conn. App. 125, 137, 907 A.2d 1220 (2006). Because we conclude that expert testimony was not required in this case—the question involved did not go beyond the field of the ordinary knowledge and experience of the trier of fact—we need not apply this exception in our analysis.

lay people, such as members of the jury and the presiding judge, to understand the applicable standard of care and to evaluate the defendant's actions in light of that standard." (Internal quotation marks omitted.) *Ahern* v. *Fuss & O'Neill, Inc.*, 78 Conn. App. 202, 208–209, 826 A.2d 1224, cert. denied, 266 Conn. 903, 832 A.2d 64 (2003).

Nevertheless, "[a]lthough expert testimony may be admissible[7] in many instances, it is required only when the question involved goes beyond the field of the ordinary knowledge and experience of the trier of fact. . . . The trier of fact need not close its eyes to matters of common knowledge solely because the evidence includes no expert testimony on those matters."[8] (Citations omitted; internal quotation marks omitted.) *State* v. *Padua*, 273 Conn. 138, 149, 869 A.2d 192 (2005). Rather, "[j]urors [and courts] are not expected to lay aside matters of common knowledge or their own observation and experience of the affairs of life, but, on the contrary, to apply them to the evidence or facts in hand, to the end that their action may be intelligent and their conclusions correct."[9] Id., 157.

---

[7] Expert testimony generally is admissible if "(1) the witness has a special skill or knowledge directly applicable to a matter in issue, (2) that skill or knowledge is not common to the average person, and (3) the testimony would be helpful to the court or jury in considering the issues." (Internal quotation marks omitted.) *State* v. *Borrelli*, 227 Conn. 153, 165, 629 A.2d 1105 (1993).

[8] The commentary to § 7-2 of the Connecticut Code of Evidence, regarding the admission of expert testimony, provides: "[T]he expert witness' testimony must assist the trier of fact in understanding the evidence or determining a fact in issue. . . . Crucial to this inquiry is a determination that the scientific, technical or specialized knowledge upon which the expert's testimony is based goes beyond the common knowledge and comprehension, i.e., 'beyond the ken,' of the average juror." (Citations omitted.) Conn. Code Evid. § 7-2, commentary.

[9] "We note that expert testimony has not been required to show: negligent boat operation; *Michalski* v. *Hinz*, 100 Conn. App. 389, 404, 918 A.2d 964 (2007); or detrimental effects of marijuana. *State* v. *Padua*, supra, [273 Conn.] 149; see also *Ciarlelli* v. *Romeo*, 46 Conn. App. 277, 283, 699 A.2d 217 (citing cases concluding expert testimony not required to prove: effect

In this case, Holmes testified at trial that in order to complete the work in a safe and workmanlike manner, it was necessary to remove all combustible materials from the vicinity of the plumber's torch. More specifically, he testified that a plumber would violate the standard of care if a torch was used within the immediate vicinity of paperbacked insulation. He also testified that the fire would not have occurred if he had not been soldering. On the basis of the evidence at trial, the court found that it was clear that the fire started as a result of soldering caused by the plumber's torch.

We conclude, as the court did, that the standard of care at issue in this case is whether Holmes was negligent in failing to exercise reasonable care in operating the plumber's torch in the vicinity of combustible materials. Contrary to the defendant's argument, the issue did not entail the technical skills required to replace shower diverters and the soldering of pipes. Because the question of whether a reasonable person should operate a torch within the vicinity of combustible materials does not go beyond the field of the ordinary knowledge and experience of the trier of fact, we hold that expert testimony was not required to determine if the defendant's performance complied with the requisite standard of care.

We note also that our Supreme Court has determined that a plaintiff may prove the standard of care through the testimony of a defendant. *LePage* v. *Horne,* supra, 262 Conn. 132. As an expert witness, the defendant is "not required specifically to have expressed as an opinion that [she] breached the standard of care in order

of operating gasoline station on traffic safety; injuries sustained on plaintiff's property were caused by defendant's blasting; negligence in failing to erect porch railing; fence erected around blasting area insufficient to prevent injuries; obscenity of certain materials for minors), cert. denied, 243 Conn. 929, 701 A.2d 657 (1997)." *Allison* v. *Manetta,* 284 Conn. 389, 406, 933 A.2d 1197 (2007).

for the [plaintiff] to prevail. . . . Rather, the [plaintiff] need only have produced sufficient expert testimony to permit the [court] reasonably to infer, on the basis of its findings of fact, that [the defendant] breached the standard of care." (Internal quotation marks omitted.) Id. Here, Holmes, a licensed plumber in Connecticut who has worked as a plumber for years, testified that a plumber would violate the standard of care if a torch was used within the immediate vicinity of paperbacked insulation. Thus, even though we have determined that the standard of care owed by Holmes did not go beyond the ordinary knowledge and experience of the trier of fact, the plaintiff nonetheless produced sufficient expert testimony at trial through the testimony of Holmes.

II

The defendant next claims that the court improperly granted the plaintiff's motion to preclude the defendant's expert witnesses, Loomis and Wypychoski, from testifying at trial. We disagree.

Before addressing these claims, we note the applicable standard of review. "The decision to preclude a party from introducing expert testimony is within the discretion of the trial court. . . . On appeal, that decision is subject only to the test of abuse of discretion." (Citation omitted; internal quotation marks omitted.) *Amsden* v. *Fischer*, 62 Conn. App. 323, 325–26, 771 A.2d 233 (2001). "The determinative question for an appellate court is not whether it would have imposed a similar sanction, but whether the trial court could reasonably conclude as it did given the facts presented." (Internal quotation marks omitted.) *Bourquin* v. *B. Braun Melsungen*, 40 Conn. App. 302, 306, 670 A.2d 1322, cert. denied, 237 Conn. 909, 675 A.2d 456 (1996).

A

The plaintiff filed its motion to preclude the defendant from offering the expert testimony of Loomis in

support of the defendant's allegation that preexisting conditions at the Commons, specifically the lack of fire stops, contributed to the spread of the fire. As stated in Loomis' report, which was admitted as an exhibit, the purpose of his investigation was to determine whether violations or departures from building and fire safety code requirements might have contributed to the spread of the fire. Although the court allowed Loomis to testify at trial, ultimately the court decided not to consider his testimony in resolving the plaintiff's claim.

In its memorandum of decision, the court noted that the defendant did not plead a special defense or counterclaim bringing to the plaintiff's attention the defendant's argument that a preexisting condition at the Commons contributed to the spread of the fire. Essentially, the court determined that it was the defendant's intention to use the testimony of Loomis to establish a reduction in damages because the Commons was responsible, in part, for the spread of the fire. The court then went on to highlight again that the defendant had not pleaded such a contention. Furthermore, the court found that no evidence had been introduced by the defendant to support a claim of diminishment. As a result, the court found that it was "not permitted to consider any testimony by Loomis or any evidence of fire spread presented by [the] defendant, and the court must presume that the [Commons] acted with reasonable care . . . ."

On appeal, the defendant argues that because it pleaded a general denial of the plaintiff's claim, it was not necessary to plead as a special defense that the building was not in compliance with the applicable code. Thus, the defendant argues that in order for the court to fairly evaluate the defendant's denial of liability, it was incumbent on the court to consider Loomis' expert testimony.

In support of its argument, the defendant relies on *Pawlinski* v. *Allstate Ins. Co.*, 165 Conn. 1, 6, 327 A.2d 583 (1973), which states: "The issues to be tried may be framed in several ways. A denial of a material fact places in dispute the existence of that fact. Even under a denial, a party generally may introduce affirmative evidence tending to establish a set of facts inconsistent with the existence of the disputed fact. . . . If, however, a party seeks the admission of evidence which is consistent with a prima facie case, but nevertheless would tend to destroy the cause of action, the 'new matter' must be affirmatively pleaded as a special defense." (Citations omitted.) Under this precedent, the defendant contends that Loomis' testimony establishing that the building did not comply with the applicable building code does not itself negate liability but, rather, is an additional or contributing cause to the spread of fire. As such, the defendant argues that had the court considered Loomis' testimony, the ultimate judgment for the full amount of damages could not have resulted.

We are not persuaded. One of the overarching tenets of *Pawlinski* is that "[t]he purpose of pleading is to apprise the court and opposing counsel of the issues to be tried, not to conceal basic issues until the trial is under way." (Internal quotation marks omitted.) Id. In *Pawlinski*, the plaintiff brought an action to enforce an agreement, and an endorsement was introduced in evidence to prove the terms of that agreement. Id., 7. Our Supreme Court concluded that "[t]o require a defendant to plead a special defense in order to attack the probative force of such an exhibit would border on the ludicrous." Id. Consequently, the court held that the defendant's evidence was properly admitted because it sought to prove facts that were inconsistent with the plaintiff's express allegation that the defendant was liable. Id., 8.

Here, the defendant is not arguing that Loomis' testimony would provide facts that directly are inconsistent with the plaintiff's allegations. In his report, Loomis concluded that the "immediate cause of the fire was contact between the flame from a plumber's torch and the combustible vapor barrier facing of thermal insulation within the partition where the mechanic was working." Conversely, the gravamen of the defendant's argument is that the extent of its liability should be mitigated due to the contributory or comparative negligence[10] of the Commons. The plaintiff framed the purpose of Loomis' testimony as grounded in contributory negligence—an argument the defendant never refuted at trial—and the court characterized it in the same manner as well.[11] The defendant, in the damages discussion of its appellate brief, states: "The failure to prove damages is significant, particularly when coupled with the failure to proffer expert testimony and the failure to account for the [*Common's*] *contributory negligence*." (Emphasis added.) Thus, the defendant sought to introduce Loomis' testimony at trial in support of an argument that sounded in contributory negligence.

"General Statutes § 52-114[12] explicitly states that there is a presumption that the plaintiff in a negligence

---

[10] "Although Connecticut has adopted the doctrine of comparative negligence; see General Statutes § 52-572h (b); our statutes retain the term contributory negligence. See, e.g., General Statutes §§ 52-114 and 52-572h (b)." (Internal quotation marks omitted.) *Juchniewicz* v. *Bridgeport Hospital*, 281 Conn. 29, 32 n.4, 914 A.2d 511 (2007).

[11] In a colloquy with the defendant's counsel regarding the plaintiff's objection to Loomis' testimony, the court stated: "[Loomis] may be familiar with the [building] code, but [the plaintiff's] objection is based upon the fact that there was no special defense . . . or claim . . . of comparative negligence. You never made that claim in your defense. Now, [the defendant is] expanding [its] pleading by having [Loomis] discuss a code which [the plaintiff] does not even know about."

[12] General Statutes § 52-114 provides: "In any action to recover damages for negligently causing the death of a person, or for negligently causing personal injury or property damage, *it shall be presumed* that such person whose death was caused or who was injured or who suffered property damage was, at the time of the commission of the alleged negligent act or

action was exercising reasonable care at the time of injury, and that the defendant must specially plead contributory negligence.[13] The statute allocates the burden of proof of contributory negligence to the defendant once it has been specially pleaded." *Sady* v. *Liberty Mutual Ins. Co.*, 29 Conn. App. 552, 556, 616 A.2d 819 (1992). In the present case, the defendant did not plead contributory negligence, so the plaintiff had no burden under the law to prove that the Commons exercised reasonable care; it was presumed. Id., 556–57.

We conclude that the court did not abuse its discretion in not considering Loomis' testimony. The defendant did not plead contributory negligence as required by statute and the rules of practice, it did not establish that the Commons had knowledge of the building's lack of fire stops or that the Commons even owned the building when it was constructed and it did not offer any evidence as to how much of its liability should be lessened, given the building's alleged lack of compliance with the building code. After allowing Loomis to testify, the court then reasonably concluded that it should not consider his testimony or any evidence that the fire spread due to an alleged lack of fire stops, given the defendant's failure to apprise the plaintiff of its claim through an affirmative pleading.

B

With regard to the plaintiff's motion to preclude Wypychoski from testifying as an expert, again the defendant maintains on appeal that a "fundamental

---

acts, in the exercise of reasonable care. If contributory negligence is relied upon as a defense, *it shall be affirmatively pleaded* by the defendant or defendants, and the burden of proving such contributory negligence shall rest upon the defendant or defendants." (Emphasis added.)

[13] See also Practice Book § 10-53 ("[i]f contributory negligence is relied upon as a defense, it shall be affirmatively pleaded by the defendant and the defendant shall specify the negligent acts or omissions on which the defendant relies").

piece of the plaintiff's case was missing [because] there was no expert testimony proffered on the issue of how the defendant breached the standard of care for a professional plumber." According to the defendant, the "trial court's failure to hold the plaintiff accountable for this omission was compounded by the refusal to allow Wypychoski to testify as an expert in this case." The defendant argues that because the court refused to allow relevant, instructive testimony on areas outside of common knowledge, and because this refusal impacted the outcome of the case, the judgment should be reversed and the matter remanded for a new trial.

Before the court heard evidence, it granted the plaintiff's motion to preclude the expert testimony of Wypychoski because he never was disclosed as an expert. Strictly as a precautionary matter, the plaintiff had filed the motion in limine to preclude him from providing expert testimony. During a colloquy with the court, the defendant's counsel explicitly stated that the defendant did not intend to use Wypychoski as an expert. When the court ultimately determined that it would allow him to testify as a fact witness only, the defendant's counsel stated that the ruling was reasonable. Wypychoski was not subsequently called to testify at trial. On the basis of these facts, we cannot conclude that the court abused its discretion in granting the plaintiff's motion to preclude Wypychoski from testifying as an expert.

### III

The defendant's final claim is that the court improperly concluded that the plaintiff established its damages to a reasonable degree of certainty under the circumstances. Because the plaintiff was unable to testify as to an actual out-of-pocket cost to repair the damages caused by the fire and there were no receipts for the actual repair costs, the defendant argues that the judgment should be reversed and the case remanded for a

new trial. Additionally, the defendant contends that the plaintiff failed to submit its insurance policy with the Commons into evidence and, thus, there is no document in evidence that supports the plaintiff's claim to a right of subrogation. We are not persuaded by the defendant's arguments.

In its memorandum of decision, the court found that Wheeler, the plaintiff's insurance adjuster who had more than fourteen years of experience in the profession, was sent a written form by the adjusters representing the Commons that detailed line by line the areas that had to be repaired. This form was admitted as an exhibit without objection by the defendant. Wheeler also retained a contractor to determine the scope of the damages. The contractor prepared two reports outlining the losses at the Commons. Both reports were admitted as exhibits, and the final report concluded that the repair costs were $676,842.67. Wheeler specifically relied on these reports in creating the statement of loss. Wheeler then reviewed the insurance policy that was issued by the plaintiff to the Commons, determined what was covered under the policy and applied that to the loss in arriving at the summary of claim that was also admitted as an exhibit. The plaintiff paid the Commons $664,373.02 because of the insured fire loss and received a subrogation receipt from the Commons stating this amount.

The court found that the defendant did not offer any rebuttal evidence that $664,373.02 did not represent the cost of repair. Furthermore, the court found that although the defendant argued that the damages should be reduced because the Commons was responsible in part for the spread of the fire, it neither affirmatively pleaded that claim nor offered any evidence in support of diminished damages. After reviewing the evidence, the court determined that the defendant's argument that the damages were an approximation was without

merit. Accordingly, the court awarded judgment in favor of the plaintiff for $664,373.02, plus interest at 6 percent from July 9, 1997, the date the plaintiff received the subrogation receipt.

"[T]he trial court has broad discretion in determining damages. . . . The determination of damages involves a question of fact that will not be overturned unless it is clearly erroneous. . . . Damages are recoverable only to the extent that the evidence affords a sufficient basis for estimating their amount in money with reasonable certainty. . . . Thus, [t]he court must have evidence by which it can calculate the damages, which is not merely subjective or speculative, but which allows for some objective ascertainment of the amount." (Citation omitted; internal quotation marks omitted.) *Duplissie* v. *Devino*, 96 Conn. App. 673, 699, 902 A.2d 30, cert. denied, 280 Conn. 916, 908 A.2d 536 (2006). "Speculative evidence is not sufficient evidence for the trier to make a fair and reasonable estimate of the plaintiff's damages . . . however, [m]athematical exactitude in the proof of damages is often impossible, but the plaintiff must nevertheless provide sufficient evidence for the trier to make a fair and reasonable estimate. . . . Evidence is considered speculative when there is no documentation or detail in support of it and when the party relies on subjective opinion." (Citations omitted; internal quotation marks omitted.) *Viejas Band of Kumeyaay Indians* v. *Lorinsky*, 116 Conn. App. 144, 163, 976 A.2d 723 (2009).

On the basis of our review of the record, we conclude that the court did not abuse its discretion in determining the amount of damages and that there was sufficient evidence to support the plaintiff's claim to a right of subrogation. The evidence affords a sufficient basis for determining with reasonable certainty that the plaintiff's damages were $664,373.02.

The judgment is affirmed.

In this opinion the other judges concurred.

* The listing of judges reflects their seniority status on this court as of the date of oral argument.