## MARVIE E. BRYE *v.* STATE OF CONNECTICUT
### (AC 34408)

Gruendel, Bear and Dupont, Js.

Argued October 23—officially released December 17, 2013

*Brendon P. Levesque*, with whom, on the brief, were *Karen L. Dowd* and *Dana M. Hrelic*, for the appellant (plaintiff).

*Jennifer S. Das*, assistant attorney general, with whom, on the brief, was *George Jepsen*, attorney general, for the appellee (state).

*Opinion*

BEAR, J. The plaintiff, Marvie E. Brye, appeals from the judgment of the trial court rendered in favor of the defendant, the state of Connecticut, following a trial to the court of the plaintiff's negligence claim, which was based on a premises liability theory. On appeal, the plaintiff claims that the court erroneously found that: (1) he failed to prove that the state was in possession and control of the premises at the time the allegedly dangerous condition was created, and (2) he needed expert testimony to prove that the use of one-quarter inch thick plywood to cover a former theater stage

lighting pit created a dangerous condition. Although we agree with the plaintiff's first claim, we, nonetheless, affirm the judgment of the trial court because the plaintiff failed to offer expert testimony that the use of one-quarter inch thick plywood to cover the lighting pit created a dangerous condition.

The following facts, as found by the trial court, and procedural history are relevant to our consideration of the plaintiff's claims. "This case arises out of a claim of personal injuries sustained by the plaintiff . . . while an inmate of the department of correction ([department]) at the J.B. Gates Correctional Institution (Gates facility) . . . on May 9, 2002. During recreation time, [the plaintiff] was acting as a spotter for a fellow inmate who was using a weight lifting bench located on a gymnasium stage when he took a step backward (toward the front of the stage) and fell due to a portion of the floor collapsing, causing his right foot and leg to penetrate the floor by approximately eighteen inches, allegedly resulting in injuries to the plaintiff, including an alleged permanent disability to his back. The area of the stage where the fall occurred had been used as a lighting pit for theatrical performances when the facility was operated as a women's prison sometime in the past. The pit had been covered with one-quarter inch thick plywood once the facility no longer housed female inmates. . . .

"On January 9, 2006, after receiving the permission of the Claims Commissioner to sue the [s]tate . . . pursuant to General Statutes § 4-160 et seq., the plaintiff commenced this negligence action seeking money damages from the [s]tate. In his amended complaint . . . the plaintiff allege[d] that, 'at all times relevant herein,' the Gates facility was under the authority of the department . . . which 'is governed and controlled' by the [s]tate. He further allege[d] that the occurrence resulting in his injuries on May 9, 2002, was the collapse

of the floor, while he was lifting weights on the stage area in the gym facility. In paragraph #5, he attribute[d] that occurrence to the negligence and carelessness of the [s]tate . . . ." (Citation omitted; emphasis omitted; footnote omitted.) After a trial to the court, the court concluded that the plaintiff failed to prove that the state was in possession and control of the premises at the time the allegedly dangerous condition on the stage was created and that, even if the state had created the condition, the plaintiff failed to provide the necessary expert testimony to prove that the state's use of one-quarter inch thick plywood to cover the lighting area of the stage floor created a dangerous condition. Accordingly, the court rendered judgment in favor of the state. This appeal followed.[1]

---

[1] We note that the plaintiff on appeal relies only on an affirmative act of negligence for his premises liability claim. Previously, we have explained that in such cases, a plaintiff alleges that " 'the defendant's conduct created the unsafe condition . . . . [Therefore], proof of notice is not necessary . . . because when a defendant itself has created a hazardous condition, it safely may be inferred that it had knowledge thereof.' . . . *Meek* v. *Wal-Mart Stores, Inc.*, 72 Conn. App. 467, 474, 806 A.2d 546, cert. denied, 262 Conn. 912, 810 A.2d 278 (2002); see also *Tuite* v. *Stop & Shop Cos.*, 45 Conn. App. 305, 308–309, 696 A.2d 363 (1997); *Fuller* v. *First National Supermarkets, Inc.*, 38 Conn. App. 299, 301, 661 A.2d 110 (1995)." *Kelly* v. *Stop & Shop, Inc.*, 281 Conn. 768, 777, 918 A.2d 249 (2007). Our Supreme Court recently explained that our "analysis in *Meek*, which [the Supreme Court] adopted in *Kelly* v. *Stop & Shop, Inc.*, [supra, 785–86], cited three cases for the proposition that, 'when a defendant itself has created a hazardous condition, it safely may be inferred that it had knowledge thereof.' *Meek* v. *Wal-Mart Stores, Inc.*, [supra, 474]. Upon closer examination, each of those cases involved factual scenarios in which the defendant was on notice of a dangerous condition, through constructive notice, actual notice, or a foreseeably hazardous mode of operation, respectively. Rather than acting as an alternative to notice, the affirmative act rule allows an inference of notice when circumstantial evidence shows that the defendant knew or should have known of the dangerous condition because it was a foreseeably hazardous one that the defendant itself created." *DiPietro* v. *Farmington Sports Arena, LLC*, 306 Conn. 107, 123–24, 49 A.3d 951 (2012).

We also note that in the present case, the plaintiff did not allege, argue or prove that the installation of the quarter-inch thick plywood violated the state or local building code.

## I

The plaintiff first claims that the court erroneously concluded that he had failed to prove that the state was in possession and control of the premises at the time the plywood was installed over the lighting pit. He argues that the state admitted in its answer that the Gates facility, *at all times relevant*, was under the authority of the department and that the department is a state agency. We agree.

The plaintiff argues that our standard of review is plenary because his claim concerns the interpretation of pleadings. The state argues that our standard of review is abuse of discretion because it concerns "[w]hat is the relevant time period for the placing of the plywood." (Internal quotation marks omitted.) We agree with the plaintiff that plenary review of this claim is appropriate.

"Construction of the effect of pleadings is a question of law and, as such, our review is plenary. . . . Pleadings are intended to limit the issues to be decided at the trial of a case and [are] calculated to prevent surprise. . . . [The] purpose of pleadings is to frame, present, define, and narrow the issues, and to form the foundation of, and to limit, the proof to be submitted on the trial . . . . Accordingly, [t]he admission of the truth of an allegation in a pleading is a judicial admission conclusive on the pleader. . . . A judicial admission dispenses with the production of evidence by the opposing party as to the fact admitted, and is conclusive upon the party making it. . . . [The] admission in a pleading or answer is binding on the party making it, and may be viewed as a conclusive or judicial admission . . . . It is axiomatic that the parties are bound by their pleadings." (Internal quotation marks omitted.) *Young* v. *Vlahos*, 103 Conn. App. 470, 476–77, 929 A.2d 362 (2007), cert. denied, 285 Conn. 913, 943 A.2d 474 (2008) (concluding that by admitting plaintiff was lessor, defendant

dispensed with need for plaintiff to prove that fact because admission was conclusive). "Judicial admissions are voluntary and knowing concessions of fact by a party or a party's attorney occurring during judicial proceedings. . . . They excuse the other party from the necessity of presenting evidence on the fact admitted and are conclusive on the party making them. . . . Admissions, whether judicial or evidentiary, are concessions of fact, not concessions of law." (Citations omitted; internal quotation marks omitted.) *Borrelli* v. *Zoning Board of Appeals*, 106 Conn. App. 266, 271, 941 A.2d 966 (2008).

In the plaintiff's operative complaint, he alleged in relevant part: "2. At all times relevant herein, the [Gates facility] is a Correctional Institution under the authority of the [department]. 3. At all times relevant herein, the [department] is governed and controlled by the [state] . . . ." In response to these allegations, the state specifically admitted the whole of paragraph two of the operative complaint and "[a]s to paragraph [three], the [state] admits that the [department] is a state agency within the executive branch of government of the State of Connecticut. The rest of and remainder of the allegations are denied." We conclude, as a matter of law, that these are judicial admissions, which obviated the need for the plaintiff to produce evidence on this issue. The state admitted that "[a]t all times relevant herein" the Gates facility was under the authority of the department and that the department is a state agency. Such factual admissions are binding and conclusive on the state. See *Borrelli* v. *Zoning Board of Appeals*, supra, 106 Conn. App. 266, 271; see also *Young* v. *Vlahos*, supra, 103 Conn. App. 476. It is readily ascertainable that the relevant time period alleged in the complaint was from the installation of the plywood through the date of the accident. Accordingly, the court erroneously concluded

that the plaintiff needed to produce evidence to prove these allegations.

## II

The plaintiff next claims that the court "applied the wrong standard in determining that expert testimony was required, and then decided the ultimate issue on a broader scope than was actually alleged and proved at trial." He argues that the court applied the wrong standard when it stated that it " 'must apply its own experience and its extremely limited knowledge of carpentry, structural concepts and engineering principles.' " He contends that "this is not the law on the requirement for expert testimony. The need for expert testimony is based on an average juror." Further, he argues that "[t]he trial court held that the plaintiff had not proven that the use of the one-quarter inch thick plywood was a defect, relying upon the lack of expert testimony and the trial court's 'extremely limited knowledge of carpentry, structural concepts and engineering principles.' This holding is error as the plaintiff did not present a claim [that] required 'knowledge of carpentry, structural concepts and engineering principles.' Rather, the plaintiff's case was based upon the simple claim that the use of quarter-inch plywood to cover a hole is a defect that the [state] itself created. . . . The case was no more complicated than that, and was certainly within the ordinary knowledge of a lay person." The plaintiff also argues that the state and the court improperly expanded his claim of negligence and then determined that he needed to produce an expert to explain "the makeup of the structure that supported the plywood planks, the time of construction, the method of construction or the load capacity of the structure." (Internal quotation marks omitted.) He argues that because he did not "claim that the structure underlying the plywood was the cause of his injuries, there was no need for such expert testimony." He contends that

the "only question in this case is whether the claimed affirmative act of negligence, the use of one-quarter inch thick plywood to cover a hole in an area where inmates walked and worked out, was a dangerous condition. Because the wisdom of using one-quarter inch thick plywood to cover a hole in a floor where inmates are going to be lifting weights is not beyond the ken of the reasonable person, there was no need for expert testimony . . . ." He continues: "What is most telling on this issue is the contemporaneous report by Lieutenant [Randy] Dossat [that] stated that: This pit area is covered with [one-quarter inch thick] plywood which cannot support the weight of an individual. . . . Indeed, the trial court itself stated that Dossat, who admitted to no expertise in construction . . . opined therein that the thickness of the plywood cannot support the weight of an individual." (Citation omitted; internal quotation marks omitted.) Essentially, the plaintiff asserts that Dossat's testimony demonstrates that a lay person, whom the court described as someone with " 'no expertise in construction,' " knew that one-quarter inch thick plywood could not " 'support the weight of an individual' "; therefore, Dossat's testimony clearly demonstrates that such knowledge is within the ken of an average juror, who also had no expertise in construction. Considering the whole of the plaintiff's argument, we conclude, as a matter of law, that even if the court expressed an improper standard when it stated that it "must apply its own experience and its extremely limited knowledge," expert testimony was needed in this case because it is not within the ken of an average fact finder that the use of one-quarter inch plywood to cover the lighting pit would create a dangerous condition.[2]

---

[2] Each of the multiple one-quarter inch thick sections of plywood used to cover the lighting pit was sixteen and one-half inches long and fourteen inches wide.

The parties, again, contest the appropriate standard of review. The plaintiff argues that the issue of whether expert testimony is required warrants a plenary standard of review. The state argues that the appropriate standard of review is abuse of discretion. We agree with the plaintiff that we must employ a plenary standard of review to determine whether expert testimony was required in this case.

"The court's determination of whether expert testimony was needed to support the plaintiff's claim of negligence against the defendant was a legal determination, and, thus, our review is plenary. . . . In a negligence action . . . expert testimony will be required [i]f the determination of the standard of care requires knowledge that is beyond the experience of a normal fact finder . . . .[3] The requirement of expert testimony . . . serves to assist lay people, such as members of the jury and the presiding judge, to understand the

[3] We also recognize that "[t]here is an exception to this rule, however, where there is such an obvious and gross want of care and skill that the neglect is clear even to a [layperson]. . . . Thus, when the defendant's performance constitute[s] such an obvious and gross want of care and skill as to fall within the exception to the expert witness requirement, the plaintiff is not required to present expert testimony to establish the proper standard of professional skill and care." (Internal quotation marks omitted.) *Utica Mutual Ins. Co.* v. *Precision Mechanical Services, Inc.*, 122 Conn. App. 448, 454 n.6, 998 A.2d 1228, (2010), cert. denied, 298 Conn. 926, 5 A.3d 487 (2010). If the court concludes that expert testimony was not required in a case — the question involved did not go beyond the field of the ordinary knowledge and experience of the trier of fact—however, it need not apply this exception. See id.; see also *Davis* v. *Margolis*, 215 Conn. 408, 416 n.6, 576 A.2d 489 (1990) ("[t]he only exception to this rule is where there is present such an obvious and gross want of care and skill that the neglect is clear even to a layperson" [internal quotation marks omitted]); *Vanliner Ins. Co.* v. *Fay*, 98 Conn. App. 125, 138, 907 A.2d 1220 (2006) (compensation adjuster's late filing of notice on behalf of plaintiff was such obvious and gross want of care and skill such that neglect was clear even to layperson).

In the present case, the plaintiff claims that the question presented is within the field of the ordinary knowledge and experience of an average fact finder.

applicable standard of care and to evaluate the defendant's actions in light of that standard . . . .[4]

"Nevertheless, [a]lthough expert testimony may be admissible in many instances, it is required only when the question involved goes beyond the field of the ordinary knowledge and experience of the trier of fact. . . . The trier of fact need not close its eyes to matters of common knowledge solely because the evidence includes no expert testimony on those matters. . . . Rather, [j]urors [and courts] are not expected to lay aside matters of common knowledge or their own observation and experience of the affairs of life, but, on the contrary, to apply them to the evidence or facts in hand, to the end that their action may be intelligent and their conclusions correct. " (Citations omitted; footnotes altered; internal quotation marks omitted.) *Utica Mutual Ins. Co.* v. *Precision Mechanical Services, Inc.*, 122 Conn. App. 448, 454–55, 998 A.2d 1228, cert. denied, 298 Conn. 926, 5 A.3d 487 (2010).

In the present case, we conclude that the question of whether it was a breach of the standard of care and, therefore, negligent, for the state to use one-quarter inch thick plywood to cover the lighting pit involved a question that was beyond the field of the ordinary knowledge and experience of the average fact finder. See id., 455; see also *Vanliner Ins. Co.* v. *Fay*, 98 Conn. App. 125, 137, 907 A.2d 1220 (2006). The plaintiff argues in his brief that the only issue in this case is "whether one-quarter inch thick plywood will hold up a person's weight when used to cover a hole . . . ." We, like the

---

[4] The commentary to § 7-2 of the Connecticut Code of Evidence, regarding the admission of expert testimony, provides in relevant part: "[T]he expert witness' testimony must assist the trier of fact in understanding the evidence or determining a fact in issue. . . . Crucial to this inquiry is a determination that the scientific, technical or specialized knowledge upon which the expert's testimony is based goes beyond the common knowledge and comprehension, i.e., 'beyond the ken,' of the average juror." (Citations omitted.)

trial court, are not persuaded that the average fact finder knows the answer to that question.

Although Lieutenant Dossat opined that the former lighting pit area of the stage where the plaintiff had fallen through was not a safe area that could support the weight of an individual, this conclusion was reached *after* the plaintiff's accident. Dossat also testified that he had no idea the area was unsafe prior to the plaintiff's accident and that he regularly saw people jump off of and on to the stage using that area. He also stated that he did not know the load capacity of quarter-inch plywood. Another witness, David Wiencek, also a department employee, testified that he had walked on the area prior to the plaintiff's accident, that, at the time, he weighed 220–225 pounds and that, although there was a slight give to the area, he had no question in his mind about the safety of the area. Wiencek also testified that he had no idea what is the load capacity for one-quarter inch thick plywood.

On the basis of the evidence presented at trial, the court concluded, in relevant part, that expert testimony was necessary to determine whether the state breached the standard of care in installing one-quarter inch plywood over the lighting pit. We agree with this conclusion.

The judgment is affirmed.

In this opinion the other judges concurred.